TOMSECEK and another, by guardian *ad litem,* Respondents, vs. THE TRAVELERS' INSURANCE COMPANY, Appellant.

*January 11—January 28, 1902.*

*Life insurance: Payment of first premium: Agency: Implied. authority: Waiver.*

A life insurance policy provided that it should not take effect unless the first premium was paid while the insured was in good health. The insurer's agent agreed to accept goods from the

insured's meat market in payment of the first premium. In-
sured died before any such goods were delivered to the agent.
*Held,* that the agent had no implied authority to make such an
agreement and that the delivery of the policy pursuant thereto
did not constitute a waiver of payment of the first premium,
or the other conditions of the policy.

APPEAL from a judgment of the circuit court for Craw-
ford county: GEO. CLEMENTSON, Circuit Judge. *Reversed.*

Appeal from a judgment in favor of plaintiffs on an in-
surance policy, rendered in the circuit court for Crawford
county. The defense, in the main, was noncompliance with
the following condition of the insurance contract:

"All premiums are payable at the home office in Hartford,
Connecticut, but will be accepted if paid to an agent in ex-
change for a receipt signed by its president or secretary and
countersigned by the agent designated thereon. This policy
shall not take effect unless the first premium is paid while
the insured is in good health."

The evidence was to the following effect: Maurice M. En-
right and Vincent J. Tomsecek were copartners in the busi-
ness of running a meat market at the time the policy was is-
sued, for a considerable time theretofore, and thereafter till
the latter died. By the consent of Enright, Tomsecek and
one Webb, agent for the defendant company, agreed that
Tomsecek should take out a policy of life insurance in such
company, paying the first premium by giving such agent
credit on account at the meat market, as payment for meat
furnished and to be furnished, to the extent thereof. An ap-
plication was accordingly made to the company in due form,
no mention being made of the agreement aforesaid. The ap-
plication was accepted and a policy containing the condition
before mentioned was forwarded to the agent for delivery,
who sent it to Tomsecek by mail, not knowing that the latter
was ill. Tomsecek was then in a hospital, too ill to do busi-
ness. The policy was received at the place of business of
Enright & Tomsecek, but was never brought to the latter's

knowledge. It remained under seal as taken from the post-office till after he died. That occurred soon after the policy was received. No credit for the first payment on the policy was ever given to the agent as agreed upon, nor was such premium ever paid in any way. There was evidence to the effect that there was an understanding between the agent and Tomsecek that the latter should have an opportunity of examining the policy before deciding whether to accept it or not. The court excluded all evidence as to whether the agent had authority to accept anything in payment of the first premium upon the policy except money, upon the theory that the controversy in that regard was to be solved solely by the writings. It was in effect admitted by plaintiffs' counsel on the trial that no payment was made on the policy in money or otherwise, unless the agreement in regard to payment being made by credit to the agent at the meat market operated as payment. The circuit judge stated in the course of the trial, without dissent by plaintiffs' counsel, that he so understood the evidence and their position.

The jury found specially as follows: It was agreed be-between Tomsecek and Webb, defendant's agent, that the former should take out a policy in said company and that the first premium thereon should be paid by applying what was then due and what might become due from said agent to the firm of Enright & Tomsecek thereafter for meat, etc., furnished by them to him. The policy was mailed to Tomsecek in fulfillment of said agreement. It was not agreed between the agent and Tomsecek that the policy should not be in force until Tomsecek had an opportunity, after it was written up, to examine and accept it.

Thereafter the jury, by direction of the court, rendered a general verdict in favor of plaintiffs for the face of the policy less $22 to cover the first premium and interest upon the balance, making $1,153. Defendant's counsel moved for judgment on the special verdict. The motion was denied

and due exception taken to the ruling. Such counsel then moved the court for an order setting the special verdict and the general verdict also aside, and for judgment on the undisputed evidence or for a new trial, which motion was denied and the ruling duly excepted to. Judgment was then, on motion, rendered upon the verdict in favor of the plaintiffs.

For the appellant there were briefs by *A. H. Long,* attorney, and *W. E. Howe,* of counsel, and oral argument by *Mr. Howe.*

*J. P. Evans* and *O. B. Thomas,* for the respondents.

MARSHALL, J.   Many suggestions are made in the briefs of counsel for respondents why the judgment is right and should be affirmed, which, in our view of the case, need not be considered. The learned trial court rightly decided that if the agreement between Tomsecek and appellant's agent, that the first premium on the policy might be paid otherwise than in money, and the delivery of the policy pursuant to such agreement, constituted a waiver by the company of payment of such premium and of the condition that the policy should not take effect unless such payment should be made while Tomsecek was in good health, then the policy took effect before Tomsecek died and plaintiffs were entitled to recover; otherwise appellant is entitled to judgment. Was the decision of that question in respondents' favor right? That is the proposition upon which this appeal turns.

Many authorities are cited to our attention to the effect that possession of a policy by the assured at the time of his death *prima facie* establishes all conditions necessary to its having taken effect as a binding insurance contract in his lifetime, notwithstanding it contains a stipulation that it shall not take effect unless the first premium is paid while the assured is in good health; that if such payment was not in fact made, a waiver thereof will be presumed in the absence of evidence to the contrary. Some of such authorities hold to

rather an extreme doctrine when applied to a policy which does not contain a receipt 'for payment of the first premium and indicates that an independent instrument, evidencing such payment, is to be delivered to the assured upon such payment being made, as in this case. To that extent they are not in harmony with *McDonald v. Provident S. L. A. Soc.* 108 Wis. 213, and do not meet with our approval. The trial court applied the doctrine of such authorities to this case, and in that, as it seems, committed error. The court went further, not only holding that the agent waived and had implied authority to waive payment of the first premium while the applicant for insurance was in good health, but waived and had authority to waive payment of such premium in money and to make an agreement, binding on appellant, that payment might be made by applying the amount of the premium on the agent's indebtedness for meat and as a credit entitling him to further delivery of meat. The principle is familiar that the authority of an agent as to waiving conditions of an insurance policy before it takes effect is pretty broad, but it does not go beyond his actual authority and that reasonably implied from the nature of the business carried on. The rule in that regard is the same in respect to an agent for an insurance company as any other. There is no claim that the agent had actual authority to make the agreement found by the jury, so his authority in that regard must be tested wholly by what may be reasonably implied. It may be admitted that Webb was a general agent, and still the difficulty is not lessened, because it cannot be implied that he had any authority in excess of the power of the corporation, and it must be presumed that such power did not include the issue of policies of life insurance for anything but money.

Several cases are cited to our attention to sustain the decision that an agent may waive the conditions of an insurance policy calling for payment of the first premium in money, but none of them fit the facts of this case. The nearest ap-

proach to a situation similar to the one under consideration is that involved in *John Hancock M. L. Ins. Co. v. Schlink,* 175 Ill. 284. There the agent agreed to waive payment in money of a part of the first premium, such part not exceed- ing the amount allowed to him as his commission. The pol- icy was sustained upon the ground that payment of the full amount going to the company was made in money, the court inferentially holding that the agent had no authority to waive payment thereof. The decision followed *Lycoming F. Ins. Co. v. Ward,* 90 Ill. 554, where the agent agreed to take part payment of the first premium out of the assured's saloon. In respect to the defense of nonpayment of the first premium in money, the court said:

"As the amount paid in cash was more than enough to pay the premium on this policy, we see no ground for holding that the premium was not all paid in cash." The agent "was entitled to commissions for procuring the insurance, and if he saw proper to take out his commissions in the saloon, we know of no reason or authority to debar him from doing so."

So many loose expressions are found in text-books and legal opinions as well, as to the power of a general agent of an insurance company to waive the conditions of a policy call- ing for payment of premiums in money, that it is not to be wondered at that attorneys and courts as well sometimes go astray. A careful analysis of the authorities will show that with few exceptions, which are not of sufficient significance to be followed, the idea, that the agent of an insurance com- pany has implied authority to waive payment of premiums on an insurance policy in money and agree to take something in lieu thereof which is neither money nor an agreement to pay money, nor an equivalent to money to the insurance com- pany when taken, has no support. In May, Ins. § 360D, it is said:

"An agent authorized to deliver policies and receive pay- ment may waive the payment of the premium in cash not- withstanding a stipulation in the policy to the contrary," cit- ing *Home Ins. Co. v. Gilman,* 112 Ind. 7.

In that case the agent agreed to receive credit on his own debt to the assured for the amount of the first premium and to pay the insurance company the amount thereof, which agreement was fully carried out, the company actually receiving payment in money. The decision was grounded on the fact that the company received cash for the first premium, substantially according to the contract. The court said:

"We are not required to decide what the rights of the parties would have been in case . . . the agent had failed to give the company credit and remit in the usual course."

However, the court quoted, without explanation or qualification, and in a way to lead one astray if he fails to examine the supporting authorities, from sec. 360 of May, Ins., this language:

"If the agent be authorized to receive the premium, an agreement between the assured and the agent that the latter will be responsible to the company for the amount, and hold the assured as his personal debtor therefor, is a waiver of the stipulation in the policy that it shall not be binding until the premium is received by the company or its accredited agent," citing *Sheldon v. Conn. M. L. Ins. Co.* 25 Conn. 207; *Home Ins. Co. v. Curtis,* 32 Mich. 402; *Willcuts v. Northwestern M. L. Ins. Co.* 81 Ind. 300, 309.

The text in May is supported by *Sheldon v. Conn. M. L. Ins. Co., supra,* and *Southern L. Ins. Co. v. Booker,* 9 Heisk. 606. In the last case mentioned the agreement was to the effect that the agent should give the assured time to make the first payment. There was no waiver of payment in money. In *Sheldon v. Conn. M. L. Ins. Co.* the facts were that the agent agreed to give the applicant time to make payment of the first premium, to take his note, payable to the company on short time for one half thereof, and his promise to pay such agent the other half, and to personally make the cash payment to the company. It was the custom between the company and the agent to charge the amount of the first premium to the

latter upon forwarding to him the policy for delivery, and
for the agent to make settlements with the company from
time to time, and to remit money on account. There was no
waiver of the payment in money, only a waiver of the time
of payment. In *Home Ins. Co. v. Curtis,* the agent advanced
the money for the assured for the first premium, actually
paying it to the company, and it was held that there was a
sufficient compliance with the provision of the policy requir-
ing payment of the first premium as a condition of the policy
going into effect. In *Willcuts v. Northwestern M. L. Ins.
Co.* the facts were that the policy was issued to one of the
medical examiners of the company and it was agreed be-
tween him and the agent that the dues to the applicant for
services as medical examiner might be applied on the pre-
miums. It was held that such agreement was binding on the
company as to services actually rendered before the premium
became due, because, to that extent, it did not really con-
stitute a waiver of payment in money, as the amount due
to the examiner from the company was equivalent to it to a
cash payment to that extent.

Enough has been said to indicate the character of the au-
thorities relied upon to show that a general agent of an insur-
ance company has implied authority to waive the provision
of an insurance policy calling for payment of the first pre-
mium in money. None of them go to the extent of holding
that the agent may waive such payment and take something
in lieu thereof which does not amount to payment to the cor-
poration in cash, such as an agreement on the part of the
agent to take pay for a premium in meat, no credit being
given or payment actually made to the agent, or credit being
given by him to the corporation in the usual course of busi-
ness. The precise question we have here was decided in
*Hoffman v. John Hancock M. L. Ins. Co.* 92 U. S. 161.
There the first premium was paid to a local or special agent,
by consent of the general agent of the company, in a horse,

the cancellation of an indebtedness of the special agent to the applicant for insurance, a note to such agent and a note to the corporation. The transaction was held void, SWAYNE, J., who delivered the opinion of the court, saying:

"It is an elementary principle, applicable alike to all kinds of agency, that whatever an agent does can be done only in the way usual in the line of business in which he is acting;" and the implication to that effect "is present whenever his authority is called into activity, and prescribes the manner as well as the limit of its exercise."

It was further said, in effect, that as life insurance is a cash business, the agent of an insurance company, whether he be a general or a special agent, has no implied authority to take or agree to take personal property, such as a horse, in payment of a premium upon an insurance policy; that such an agreement, even if made by the company itself, would be *ultra vires,* and if made by an agent without the knowledge of the company it would not only be *ultra vires* but a fraud both upon the part of the agent and the applicant for insurance, for the latter must be presumed to know that an insurance premium cannot be legitimately paid in horses.

It would seem that nothing further need be said to show that the policy in question never became binding upon appellant. The jury found that the agent agreed to accept his own indebtedness for meat as part payment for the first premium and to take meat for the balance thereof. It is undisputed that such agreement was never carried out by the insured so as to obligate the agent to pay the company. Neither the company nor the agent received pay for the first premium. There is no analogy between this case and one where the agent merely agrees to give the applicant for insurance time to make the first payment, or agrees that he will advance the amount of the first payment himself, and actually does advance it, or agrees to charge himself with the first premium in his account with the company, according

to a custom of doing business between himself and his principal, thereby becoming liable to the company. We must hold here that the agent had no implied authority to use the appellant's policy of insurance to pay his meat bills or to build up a credit for future purchases of meat. There are no circumstances disclosed in the evidence to avoid the effect of that conclusion. . The motion made by appellant's counsel for judgment on the special verdict should have been granted and the duty devolves upon this court to reverse the judgment and remand the cause with directions to strike out the general verdict and render judgment in favor of defendant on the special verdict, dismissing the complaint with costs.

