JOSEPH M. GAZZAM *v.* GERMAN UNION FIRE INSURANCE COMPANY.

(Filed 26 May, 1911.)

1. Insurance, Fire—Principal and Agent—Standard Policy—Agents Within Authority—Interpretation of Statutes.

Our statutory standard fire insurance policy providing that "in the matter relating to insurance, no person, unless duly authorized in writing, shall be deemed the agent of this company," does not impose on the insured the duty of showing that the agent who issued the policy had written authority to do so.

2. Insurance, Fire—Standard Policy—Rules of Evidence—Interpretation of Statutes.

The fact that a standard form of fire insurance has been adopted by statute does not change the rules of evidence applicable to a waiver by the insurer of the terms thereof upon which the policy shall have its inception and become operative.

3. Same—Doubtful Terms.

Whatever doubtful terms or expressions a statutory standard fire insurance policy may contain are to receive the construction favorable to the insured, this rule of interpretation not being changed by virtue of the statute.

4. Insurance, Fire—Principal and Agent—Written Authority—Interpretation of Statutes.

The stipulation in a statutory standard policy that "no person shall be deemed the agent of this company unless authorized in writing" is not contractual between the company and the insured; but if otherwise, it could only relate to matters connected with the insurance after the policy has become a valid contract, and not the acts of the agent in issuing the policy.

GAZZAM *v.* INSURANCE CO.

**5. Insurance, Fire—Re-insurance—Policy Contracts—Consideration.**

　　The surrender of a fire insurance policy in one company by the insured and the relinquishment of his right to the "return premiums" furnishes a sufficient consideration to support the policy contract given by the reinsurer thereof upon these conditions; and while the reinsurer may not have received the "return premiums," it has acquired the advantage of new business by the arrangement.

**6. Insurance, Fire — Principal and Agent — Premiums—Payment— Agent's Debt.**

　　While ordinarily the insured cannot pay the premiums on his fire insurance policy by satisfying a private debt due him by the agent of the company, it does not apply when the insured has paid his premiums to the agent of the insurer in good faith, and the latter has satisfied his obligation due to another therewith, without the knowledge of the insured.

**7. Same—Evidence of Agency.**

　　N. was the general agent of the insurer, and A. its local agent. The insured failed. N. attempted to make an arrangement with the defendant insurance company, through its general agents, to reinsure the risks, with assurance to the said agents that he would take care of the policies of the old company, and they gave him the policy in suit to be sent to plaintiff, which was done. The plaintiff then returned the policy he held in the old company, and released his rights to the return premiums thereon. This arrangement was carried on without the knowledge of the insured, and it is *held*, N. was not the agent of the insured, but was the agent of the defendant insurance company, and that the latter was liable to the plaintiff for a fire loss which was covered by the policy thus issued by it.

**8. Insurance, Fire—Principal and Agent—Declarations—Evidence.**

　　The competency of the declarations of an agent of an insurance company rests upon the same footing as the declarations of an agent of an individual, and are properly admitted when they are of matters within the scope of the agency, and concern the very business about which the declaration is made.

**9. Insurance, Fire—Principal and Agent—Re-insurance—Nearness of Offices—Evidence.**

　　The plaintiff formerly held a policy of fire insurance in a company that failed, and alleges and introduces evidence tending to show that defendant insurance company reinsured the risk, in his action for loss subsequently sustained by him, on the subject-

matter of the policy. *Held*, evidence that the two insurance companies had offices near each other in the same office building is entitled to little consideration, but not error to have admitted it under the facts and circumstances of this case.

APPEAL from *Councill, J.*, at the December Term, 1910, of BUNCOMBE.

This is an action to recover $2,500 on a policy of fire insurance.

The defendant denied that it issued the policy or that it was issued by its authority. Prior to 22 November, 1908, the plaintiff held a fire insurance policy, issued by the Ohio German Fire Company, for $2,500 on the property described in the policy in controversy in this action, and on said day said company became insolvent, and a receiver was appointed to take charge of its assets and business. M. W. Nash was the general agent, and the firm of Alston, Rawls & Co. the local agent of said company.

The plaintiff contends that the firm of W. E. Fowler & Co. was the general agent of the defendant company; that after the failure of the Ohio German Company, the said Nash, as its general agent, entered into an agreement with the defendant, through Fowler & Co., by which he, said Nash, was appointed the general agent of the defendant in this State, and that it was a part of this agreement that the defendant would reinsure the outstanding risks of the Ohio German Company; that thereafter the defendant, through said Nash, issued the policy declared on.

The defendant denies that Fowler & Co. or Nash had authority to issue the policy, and contends that under the provision in the policy that "in the matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of this company," authority to represent the defendant cannot be shown by parol, and as no written authority has been produced, that the policy is void; that the evidence of the plaintiff fails to show any consideration to sustain the policy; that evidence admitted to prove agency was incompetent, and that on the whole evidence judgment of nonsuit should have been entered.

The policy of the defendant was delivered by Nash to Alston, Rawls & Co., who sent it to the plaintiff, and he surrendered his

policy in the Ohio German Company and his right to the return premium thereon, the amount of which is not stated.

Nash was indebted to Alston, Rawls & Co., and it was agreed between them, without the knowledge of the plaintiff, that the return premium should be applied to this indebtedness. The following agreement was made by the parties on the trial:

"First. It is admitted by the plaintiff that the defendant, the German Union Fire Insurance Company, did not receive, or has ever received, any cash consideration, by check or otherwise, to cover the premium on the policy set out in the complaint and the subject of this action.

"Second. It is admitted that Kenilworth Inn and its contents, which is alleged to have been insured by the policy set out in the complaint and sued on in this action, was totally destroyed by fire, as alleged in the complaint, and that the value of said hotel at the time of the fire was $108,101.71, and the value of the furniture and fixtures contained in said hotel at the time of the fire was $34,346.89, as set out in the amended proof of loss, which was duly transmitted by plaintiff to the defendant."

P. R. Moale, a witness for the plaintiff, among other things, testified that he, La Barbe and Chiles were agents of defendant for two or two and a half years, transacting the business of issuing policies; that he reported to Stokman & Co., Fowler & Co. and the defendant; that while reporting to the company, in the due course of business, he received the following letter:

(Stamped across letter-head.)

"DICKSON & TWEEDDALE,
GENERAL MANAGERS."

"THE GERMAN UNION FIRE INSURANCE COMPANY
OF BALTIMORE.

417 E. BALTIMORE ST.

"BALTIMORE, MD., 23 January, 1909.

"MESSRS. LABARBE, MOALE & CHILES,
Asheville, N. C.

"DEAR SIRS: This is to advise you that William E. Fowler & Co. have resigned the general agency of the German Union Fire

Insurance Company, effective 2 January, '09. You will there-fore report all business written since that date to the German Union Fire Insurance Company, 417 E. Baltimore street, and remit to them for such business.

"And upon all business written prior to 2 January, '09, for which you have not yet paid, you will send your checks in payment of such business to the German Union Fire Insurance Company direct.

"We would thank you to acknowledge receipt of this letter.

(Signed)   "GERMAN UNION FIRE INSURANCE CO.

"R. D. Tweeddale, President.

"By W. A. Shelton, Secretary."

That after receiving this letter he sent money and reported direct to the defendant; that while reporting to Fowler & Co., and in due course of business, he received by mail the following letter:

"WM. E. FOWLER & COMPANY,

GENERAL AGENTS.

FIRE INSURANCE.

417 E. BALTIMORE STREET.

"BALTIMORE, MD., 30 November, 1908.

"DEAR SIR: This is to advise you that as we have appointed Mr. W. M. Nash, Greensboro, N. C., as general agent for North Carolina for the German Union Fire Insurance Company of Baltimore, and beginning 1 December (this month), you will report all of your business to Mr. Nash, and when paying for business written during the month of December and the months following, you will remit directly to Mr. Nash.

"Upon all business written up to 1 December you will settle with W. E. Fowler & Company and take credit for all return premiums on policies canceled up to December first on your account current to W. E. Fowler & Company.

"We trust that this explanation is clear to you, and hope that this arrangement meets with your approval.

"We hope that in appointing Mr. Nash as general agent for

this territory that we can get better results for the company, and that it will· be more satisfactory to the agent, especially when we consider the fact that Mr. Nash is a North Carolina man and living in the State, and that he has made a pronounced success as a general agent, and we sincerely trust, therefore, that this appointment will have your sanction and we will have your hearty co-operation in producing business for the company as heretofore; and we also hope that the very pleasant relations heretofore existing between this office and yours may be continued through the office of Mr. Nash.

"If there is anything concerning this arrangement that is not entirely clear to you, we would be very glad to have you correspond with us freely. And again thanking you for your business, and hoping for a continuance of the same, we are,

"Yours truly,

(Signed)   "Wm. E. Fowler & Co.,

*"General Agents."*

This evidence was objected to by defendant.

Witness stated on cross-examination, without objection, that he was notified in the course of business that Fowler was the general agent of defendant.

M. W. Nash, among other things, testified for the plaintiff that the office of Fowler & Co. was situate in the same building with the offices of the defendant; that he was a stockholder of the defendant company and was present at the annual meeting in January, 1909, when Tweeddale was elected president; that he had discussed the agency of Fowler & Co. with Tweeddale several times; that he said the company would cancel its contract with Fowler & Co.; that on 26 November, 1908, he went to Baltimore and saw Mr. Fowler; that Fowler appointed him general agent of the defendant for North Carolina and agreed with him to reinsure all the risks of the Ohio German Company in the defendant company; that he afterwards received a letter from Fowler & Co. confirming this, which has been lost; that blank policies were sent him by Fowler & Co., and he issued the policy to the plaintiff and many others; that he wrote 200 or 250 policies in defendant company.

The following are the issues and the answers thereto:

1. Did the defendant, German Union Fire Insurance Company, or its agent, issue to the plaintiff, Joseph M. Gazzam, the policy of insurance set out in the complaint? Answer: Yes.

2. Was there any consideration to support said policy or contract of insurance? Answer: Yes.

3. What amount, if any, is the plaintiff, Joseph M. Gazzam, entitled to recover of the defendant, German Union Fire Insurance Company, on said policy of insurance? Answer: $2,500, with interest from 25 July, 1909, until paid.

There was a judgment for the plaintiff, from which the defendant appealed.

*Adams & Adams for plaintiff.*
*Moore & Rollins and Aycock & Winston for defendant.*

ALLEN, J., after stating the case. The policy declared on is what is known as the standard policy, and contains the provision approved by the statute, that "in the matter relating to this insurance, no person, unless duly authorized in writing, shall be deemed the agent of this company."

We do not think it was the purpose of the statute to say that no recovery could be had on a policy of insurance containing stipulations not provided for in the statute, or that the stipulation under consideration imposes on the insured the duty of showing that the agent who issues the policy had written authority to do so.

If such construction should be adopted, fire insurance would be a delusion and a snare. The company could insert a new provision in the policy and render it void, or it could appoint its agents by parol, and, if the standard policy was issued, the inability of the insured to produce written authority of the agent would prevent a recovery.

The standard policy has been very generally adopted, and many of its terms have been considered by the courts.

The reasons for its adoption are well stated in *Quinlan v. Ins. Co.,* 133 N. Y, 365, in which the Court says: "The act (chapter 486, Laws 1886) providing for a uniform policy known as the standard policy, and which makes its use compulsory upon

insurance companies, marks a most important and useful advance in legislation relating to contracts of insurance. The practice which prevailed before this enactment, whereby each company prescribed the form of its contract, led to great diversity in the provisions and conditions of insurance policies, and frequently to great abuse. Parties taking insurance were often misled by unusual clauses or obscure phrases concealed in a mass of verbiage, and often so printed as almost to elude discovery. Unconscionable defenses, based upon such conditions, were not infrequent, and courts seem sometimes to have been embarrassed in the attempt to reconcile the claims of justice with the law of contracts. Under the law of 1886, companies are not permitted to insert conditions in policies at their will. The policies they now issue must be uniform in their provisions, arrangement and type. Persons seeking insurance will come to understand to a greater extent than heretofore the contract into which they enter. Now, as heretofore, it is competent for the parties to a contract of insurance, by agreement in writing or by parol, to modify the contract after the policy has been issued, or to waive conditions or forfeitures. The power of agents, as expressed in the policy, may be enlarged by usage of the company, its course of business, or by its consent, express or implied. The principle that courts lean against forfeitures is unimpaired, and in weighing evidence tending to show a waiver of conditions or forfeitures the court may take into consideration the nature of the particular condition in question, whether a condition precedent to any liability, or one relating to the remedy merely, after a loss has been incurred. But where the restrictions upon an agent's authority appear in the policy, and there is no evidence tending to show that his powers have been enlarged, there seems to be no good reason why the authority expressed should not be regarded as the measure of his power; nor is there any reason why courts should refuse to enforce forfeitures plainly incurred, which have not been expressly or impliedly waived by the company."

Also, in *Armstrong v. Ins. Co.,* 95 Mich., 139: "In construing this statute we must consider the purpose which the Legislature had in view. It was not to subserve any public policy. Con-

155—22

tracts of insurance, so far as the public are concerned, stand upon no different basis than other contracts. The object was to protect policy-holders and to provide a policy fair to the insured and the insurer, and avoid litigation. It was undoubtedly well known to the Legislature that policy-holders do not usually examine and scrutinize their policies with the same care that they do other contracts which they make, involving their ordinary business transactions. The statute imposes a penalty upon an insurance company for issuing such a policy, but imposes none upon the insured. In using the word 'void,' the Legislature certainly did not contemplate that an insurance company might insert a clause not provided for in the standard policy, receive premiums year after year upon it, and when loss occurs, say to the insured, 'Your policy is void, because we inserted a clause in it contrary to the law of Michigan.' Such a result would be a reproach upon the Legislature and the law. The law, so construed, instead of operating to protect the insured, would afford the surest means to oppress and defraud them, and thus defeat the very object the Legislature had in view."

It is also generally held that stipulations contained in the policy, upon which it shall have its inception and become operative as a contract, may be waived. The Court says, in *Wood v. Ins. Co.,* 149 N. Y., 385, that this doctrine "has long been settled." Nor has the rule that doubtful terms are to receive the construction favorable to the insured been changed. Vance on Insurance, p. 430, states the doctrine as follows: "While many of the unfair features of the earlier policies have been eliminated from the modern standard policy, the courts still apply to this instrument the same rule of construction as the considerations just mentioned led them to apply to the old forms. Any doubtful terms are always construed in favor of the insured. It has been contended that inasmuch as the law compels the use of the standard policy, and will not allow any variance from it, excepting in certain limited particulars, the insurer cannot be regarded as selecting the terms of the contract and subjected to an unfavorable rule of construction on that account. This contention, however, has been held to be without merit, for the terms of these statutory policies were chosen with reference to the con-

struction given by the precedent cases to similar terms in other policies, and therefore ought to be regarded as being used in the sense of their previous construction. It is also apparent from an examination of the instruments themselves, as well as the history of their adoption, that their terms were really chosen by the underwriters with particular reference to their own interests."

Again, he says, on page 493, with reference to the clause on which the defendant relies: "It may be stated here, however, that the condition in the standard policy stipulating that 'no person shall be the agent of the insurer unless authorized in writing,' has no contractual significance whatever. It does amount to notice to the insured, and, as such, is binding on him, if true; otherwise, not."

The decisions of our Court, in so far as the questions have been considered, are in accord with these views.

In *Floars v. Ins. Co.,* 144 N. C., 235, it was held "that the enactment of a statute which establishes a standard form for a policy, the statute being only affirmative in its terms, will not invalidate an oral contract"; and in *Black v. Ins. Co.,* 148 N. C., 170, the provisions considered did not affect the validity of the contract in its inception.

If, however, it should be held that the stipulation is contractual, the language used will reasonably lead to the conclusion that it relates to matters connected with the insurance after the policy has become a valid contract.

It does not say, "in matters relating to this *policy,* no person, unless duly authorized in writing, shall be deemed the agent of this company," but does say that "in matters relating to this *insurance."*

There is no "insurance" until a valid contract in one form or another has been entered into. We therefore conclude that the part of the policy quoted is not contractual, and that it does not relate to the acts of the agent in issuing the policy. Nor do we agree with the contention of the defendant that there is no consideration to support the contract.

The surrender of the policy in the Ohio German Insurance Company and the relinquishment of the right to the return pre-

mium thereon by the plaintiff furnished a consideration; and, in addition, while the defendant may not have received the full premium on this policy, it gained new business by its contract of reinsurance of the risks of the old company.

The defendant, while admitting the force of this view, says it has no application to the facts appearing on the record. It says that the plaintiff admits that the defendant never received any consideration for the premium; that the firm of Alston, Rawls & Co. was the agent of the plaintiff, and that the evidence of the plaintiff shows that the policy was issued by virtue of an agreement between Nash and the agent of the plaintiff that the return premium should be used to liquidate an indebtedness existing between Nash and the agent, and it relies on *Folb v. Ins. Co.*, 133 N. C., 180.

The authority is decisive of the proposition that the insured cannot pay the premium on the policy by satisfying a private debt due him by the agent of the company, and might be controlling if it appeared that the firm of Alston, Rawls & Co. was the agent of the plaintiff, but this is not our interpretation of the evidence, and there is nothing in the record to show that the plaintiff knew anything of the transaction.

It is true that a witness of the plaintiff spoke of the firm as the insurance agents of the plaintiff, but when this statement is considered in connection with the other evidence it means that the firm of Alston, Rawls & Co. was a local insurance agency, with whom the plaintiff insured. It is not unusual to hear the inquiry, "Who is your insurance agent?" meaning, "With whom do you insure?"

The record discloses that Nash was the general agent of the Ohio German Insurance Company, and the firm of Alston, Rawls & Co. its local agent; that after the failure of this company Nash attempted to make a contract with the defendant, through Fowler & Co., to reinsure its risks; that Nash assured said firm he would take care of the policies of the old company, and gave him the policy in suit, to be sent to the plaintiff, which was done, and the plaintiff then returned the policy he had held in the Ohio German Company and released his right to the return premium thereon.

The exceptions to evidence and to the refusal to give the special instructions requested, and to parts of the charge, were entered principally to preserve the exception as to the competency of parol evidence to prove the authority of the agent, and this question has already been considered; but the defendant also insists that the two letters were incompetent because they were declarations of an agent, and that the evidence as to the location of the office of Fowler & Co. was immaterial and prejudicial.

The competency of the declarations of an agent of a corporation rests upon the same principle as the declarations of an agent of an individual. If they are narrative of a past occurrence, as in *Smith v. R. R.,* 68 N. C., 107, and *Rumbough v. Improvement Co.,* 112 N. C., 752, they are incompetent; but if made within the scope of the agency and while engaged in the very business about which the declaration is made, they are competent. *McComb v. R. R.,* 70 N. C., 180; *Southerland v. R. R.,* 106 N. C., 105; *Darlington v. Tel. Co.,* 127 N C., 450.

The letters come within the last class. The evidence as to the location of the office was a slight circumstance on the question of agency, and, standing alone, would be entitled to little consideration, but we think it was not error to admit it.

There was evidence fit to be considered by the jury on the issues submitted to them, and the motion for nonsuit was properly refused. We have considered all the exceptions appearing on the record and find no error.

No Error.