## 9786

### WOOD v. SOUTHEASTERN LIFE INS. CO.

#### (93 S. E. 197.)

INSURANCE — PAYMENT OF FIRST PREMIUM — EVIDENCE — SUFFICIENCY.— A policy of life insurance, dated on Friday, was forwarded to the general agent, who received it on Saturday, and delivered it on Monday to S., an agent under him, while S. on the same day delivered the policy to W., an agent working under him. The insured died on Sunday. There was an agreement between S. and W. that certain sums due W. from S. should be accepted as payment of the premium. The insured himself never paid the premium, and had no knowledge of this agreement, nor did it appear that he was represented throughout by W. *Held,* as a matter of law, that there was no payment of the first premium.

Before WILSON, J., Spartanburg, ——, 1916. Affirmed.

Action by Mrs. Lizzie Wood against the Southeastern Life Insurance Company. Verdict directed for defendant, and plaintiff appeals.

*Messrs. Sanders & DePass,* for appellant, cite: *As to delivery of policy:* 68 S. C. 391; 71 S. C. 356. *Payment of premium:* 1 Cooley's Briefs on Ins. 471. *Waiver:* 97 S. C. 375; 71 S. C. 359.

*Messrs. Haynsworth & Haynsworth* and *John Gary Evans,* cite: *Limitations of agent's authority:* 45 S. E. 547; 71 S. E. 438; Oshander Ins. (2d ed.) 295; 92 S. C. 161. *Construction of contract:* 25 Cyc. 719; 75 N. E. 560; 61 689; 2 C. C. A. 459; 30 Fed. 545; 52 S. W. 825; notes in N. W. 201; 79 S. W. 279; 26 Atl. 78; 75 Pac. 822; 51 Fed.

17 L. R. A. (N. S.) 1114; 43 L. R. A. (N. S.) 725; 89 N.
E. 529; 45 So. 208; 38 Pac. 61; 117 Mass. 528; 89 S. W.
436; 37 Am. Rep. 317; 45 So. 208; 77 S. C. 192; 83 S. C.
236; 92 S. C. 451; 58 S. C. 201; 71 S. C. 356; 63 S. C. 192;
89 S. E. 675.

July 27, 1917.

The opinion of the Court was delivered by Mr. Justice
Gage.

Action on a life policy of insurance; direction of a verdict
for the defendant, upon the ground that the policy was never
delivered before the death of the insured; appeal by the
plaintiff.  These are the essential circumstances of the
transaction: The insured was Halcombe; the beneficiary
was his daughter, the plaintiff; the face of the policy was
$2,000, and the premium was $118.32; the general agent of
the company was Hipp, with office at Spartanburg; the
agent under Hipp was Simpson, also at Spartanburg; one
E. J. Wood, husband of the plaintiff, was an agent working
under Simpson.  The policy is dated May 1, 1914, which
was Friday; it was forwarded to Hipp at Spartanburg, and
he had it there on Saturday, the 2d of May, and on Sunday,
and part of Monday.  Halcombe died at Spartanburg sud-
denly, and apparently of heart failure, the same Sunday
night, at E. J. Wood's house.  He had been on the streets
Saturday.  The paper writing called the policy was at that
time in Hipp's safe; it had not been put into Halcombe's
hands, or actually into Wood's hands.  On Monday it was
put by Hipp into Simpson's hands; and the same day Wood
got the policy from Simpson, and "did not say anything
about Mr. Halcombe's being dead."  There was never any
premium paid by Halcombe with his own hands.  About the
foregoing circumstances there is no controversy.

The contention of the plaintiff, and E. J. Wood testified
to it, is that Simpson told E. J. Wood Saturday morning

that the policy was in Simpson's office and Wood could get it; that Wood then told Simpson he was in no particular hurry about it; that he understood the policy was in force as soon as it was issued. That incident is relied upon for a constructive delivery. The further contention of the plaintiff, and E. J. Wood testified to it also, is that the premium of $118.32 on the policy was paid by an agreement betwixt E. J. Wood and Simpson that certain sums due to Wood by Simpson should be accepted by Simpson as the payment of the premium. That incident is relied upon for payment of the premium. These two incidents make apparently two issues in the case.

The defendant made a sustaining exception, to wit, that the transaction last mentioned betwixt Simpson and Wood, without reference to the truth of it, was not in law a payment of the first premium pursuant to the contract betwixt the parties, because the transaction was beyond the scope of the agency. The issue betwixt the parties, in plain parlance, is this: Did Halcombe make a contract with the company to pay the plaintiff $2,000 at Halcombe's death and get the promised premium for the risk? Any difficulty about the issue arises out of the artifice employed by modern ingenuity to accomplish a present day insurance contract. The proposed contract was written out at the head office, out of the State, on a paper called the policy, and the policy was sent to the general agent at Spartanburg; and had Halcombe or Wood for him, called at the office Saturday, and paid the premium in money, or its equivalent, to Hipp or to Simpson, and got the policy, or even left the policy in the office, then the contract of insurance would have been complete.

While there are two apparent issues, one of delivery and one of payment, the two incidents referred to make but a single practical issue, and that is, Was the premium paid? For, had Wood paid the premium, when Simpson told him the policy was in the office and he could get it, a question of

delivery would hardly arise, because the words of the two men at that transaction would tend to prove a constructive delivery, and that issue must have been submitted to the jury. The real question touches the merits, the *quid pro quo*, Was the premium money paid? There is no pretense other than that Halcombe was bound to pay for the contract evidenced by the policy; for all insurance is based upon premiums paid for the risk, and there is no claim that the company waived payment. The claim is the contrary; that payment was made.

It is true that, although the contract stipulated for a payment of the initial premium before the risk should become effective, yet it also is true that those who have power to make contracts have the same power to modify them. Therefore, if the company, or for that matter its agents, should agree expressly or impliedly, after the policy is written, to take a promise to pay in the place of payment, say a 60-day note, then that would not invalidate the policy. The authorities are all to that effect. But that is not the instant case. Here it is not pretended by the plaintiff that the company waived payment, or that Halcombe paid the premium with his own hand, or at all, or that Wood did so for him in a medium beyond question. The contention is that Simpson owed $83.43 of money to Wood, for Wood's share of premiums which had been earned by Wood's activities in the insurance field; that Simpson was entitled to have for himself one-half the instant initial premium of $118.32, to wit, $59.16; that Simpson agreed with Wood that Wood might take the whole of that $59.16, instead of half of it, as he was limited to by his contract of service with Simpson; that the aggregate of these items exceeded the initial premium; and by agreement betwixt Simpson and Wood that transaction operated to pay that premium. There is nothing in the case to show that Halcombe had any knowledge of this arrangement; on the contrary, it does appear that throughout he was represented by E. J. Wood.

Whether, as the fact, all this is true, is not a question for us; but whether, as the law, that transaction, if true, amounted to a payment of the first premium to the company, is a question for us. We have been cited to no case from our own State which decides the question. The general rule of law in other jurisdictions is against the validity of such a transaction. 14 R. C. L. 955; *Folb* v. *Firemen's Ins. Co.* 133 N. C. 179, 45 S. E. 547; *Gazzam* v. *Germain Ins. Co.,* 155 N. C. 330, 71 S. E. 438, Ann. Cas. 1912c, 362; *Hoffman* v. *Insurance Co.,* 92 U. S. 161, 23 L. Ed. 539; *Tomsecek* v. *Travelers,* 113 Wis. 114, 88 N. W. 1013, 57 L. R. A. 455, 90 Am. St. Rep. 846; *Briggs* v. *Collins,* 113 Ark. 190, 167 S. W. 1114, L. R. A. 1915a, 686. In the instant case, the company was not indebted to Simpson or to Hipp; so the company was not paid the initial premium at all, but got for its risk only the implied promise of Simpson to pay the company that which Halcombe owed it. That transaction does not come within the power of an agent to accept payment.

There are cases which seem to sustain the contention of the appellant that the transaction was within the scope of the agency of Simpson; but the facts of them differ so much from those in the instant case as to render the judgments inconclusive. Those cases we have cited, and especially that last named, and the full note with it, fairly and fully sustain the conclusion we have come to. The decision rests in the law of agency; that law is that generally an agent's authority permits him to receive payment in money only. 2 Parsons on Contracts 615; Story on Agency, secs. 181, 413. The rule is not invariable, of course; but there are no circumstances in the instant case tending to modify the rule.

Our judgment is that there was no payment in the instant case; that the Court was not in error to direct a verdict for the defendant, whether upon the right ground or not; and that judgment is affirmed.