## THE MACCABEES v. PALMORE et al.

No. 10717.

Court of Civil Appeals of Texas. Dallas.
Oct. 27, 1930.

Rehearing Denied Nov. 29, 1930.

E. J. Jeffries, of Detroit, Mich., and E. C. Sweet, of Waco, for appellant.

McBride, O'Donnell & Hamilton, of Dallas, for appellees.

## VAUGHAN, J.

Appellees, Mrs. Virginia F. Palmore and her husband, R. H. Palmore, instituted this suit against appellant, the Maccabees, upon the membership certificate of one James Littleberry Owen in appellant association, a fraternity benefit society having subordinate lodges known as "tents," said Owen having been a member of tent No. 23 located at Dallas, Tex. Appellee Mrs. Virginia F. Palmore was the beneficiary of the benefit certificate issued to said Owen, and was entitled to participate in the funds of appellant association, to the extent of $1,000, if said Owen was a member in good standing at the time of his death, September 4, 1923. Appellant defended on the ground that said Owen neglected, failed, and refused to pay his monthly dues necessary to keep his protection in effect for the month of March, 1923, and for subsequent months up to the time of his death, whereby he became suspended from appellant association, and all rights under the certificate sued upon were thereby forfeited, and appellees could not recover on account thereof.

To this defense appellees replied by plea of confession and avoidance, presenting the following issues: (a) That appellant had waived its right to forfeit the benefit certificate issued to deceased Owen for nonpayment of March, 1923, dues during the month of March, 1923, in that, for a long period of time prior to the death of said Owen, it had been the custom and course of dealing of appellant to receive from said Owen payment of dues long after the time for payment thereof, as specified in appellant's by-laws, without declaring suspension and forfeiture for nonpayment of such dues; (b) that appellant, after knowledge of the nonpayment of the March, 1923, dues, recognized the continued existence of said benefit certificate by sending out notices to the said Owen, recognizing the validity of his benefit certificate, and that the same was in full force and effect, and thereby waived any forfeiture resulting from nonpayment of said March dues. Trial was had before the court without a jury, resulting in judgment being rendered in favor of appellees for the full amount of the benefit certificate, less the dues which should have been paid up to the death of said Owen and the amount of a loan against said certificate, and included in said judgment was a penalty of 12 per cent. upon the amount in controversy, under the provision of article 4736, R. S. 1925. As we view this appeal, the rights of the litigants must abide the determination of the issues presented by the two pleas, A and B, supra.

As bearing particularly upon said plea A, we find the following material facts to have been established by the uncontradicted testimony: That James Littleberry Owen was admitted as a member of appellant, The Maccabees, a mutual benefit association, April 14, 1904; that the benefit certificate (No. 17957) held by said Owen at the time of his death, September 4, 1923, was not the original certificate issued to him, but a reissue thereof upon a change of beneficiary; that said Owen had, as will hereinafter be more specifically stated, as to the manner and form, paid his dues from the time he became a member of appellant association up to and including February, 1923; that he failed to pay dues assessed for and due on March 1, 1923, but payable at any time during the month; that the following provisions of the by-laws of the appellant association were in force long before and at the time of the death of said Owen, and formed a part of the benefit certificate sued upon, viz.: "These monthly rates will be due, without notice, on the first day of each month and must be paid by the member to the tent record keeper on or before the first day of the month. * * * A life benefit member failing to pay a monthly rate, per capita tax, or additional assessment within the month of the first day of the month of

which it is due, shall stand suspended, without notice, from all rights of life benefit members and from all the privileges and benefits of his tent"; that, without any cause intervening to direct otherwise, the dues for the month of March, 1923, assessed against said Owen, under the provisions of appellant's by-laws, became due and payable on March 1, 1923, and he had the entire month of March within which to make payment thereof; that, upon failure of said Owen to pay the dues for the month of March within that month, said Owen became suspended automatically, without notice, at midnight on the last day of said month, and he stood suspended on April 1, 1930; that from said date of suspension to the time of the death of said Owen, covering a period of five months and four days, the assessment made for the month of March, 1923, remained unpaid; that no effort was made to pay same from the date of said assessment up to the date of said Owen's death; that the monthly rate of assessment against members on account of benefit certificates issued to them was fixed by appellant's by-laws; that there was no change in the monthly rate of assessments for the months of January, February, and March, of 1923, against said Owen.

Section 317 of appellant's by-laws of 1922 reads as follows:

"All Life Benefit members of the Association admitted prior to August 1, 1904, who did not elect to re-rate at age of entry at the beginning of 1905, and all Term Plan members admitted prior to October 1, 1919, who are past 55 years of age, shall pay $3.00 per month for each $1000 of life benefits carried until the 1st day of October, 1923, unless such members have voluntarily transferred to some other plan provided for in these laws.

"All members admitted prior to August 1, 1904, as above described shall pay after said October 1, 1923, rates at their attained age, nearest birthday, as provided in Section 317–a, 326–k of these laws.

"If, for any reason, it shall appear that a member, who is liable under the provisions of this section for the payment of the increased monthly rate, has not paid the same, when such discovery is made he shall pay same upon demand. Should his death occur before such payment is made the amount remaining due in consequence of such failure, together with six per cent. interest, shall be deducted from the amount due the beneficiaries."

Under the above by-laws said Owen, if he had survived, would have continued to pay the same rate of assessment until October 1, 1923, viz. $3 per month for each $1,000 of life benefits carried. Owen did not become a member of any particular class of plan; only one kind of certificate was issued at the time he became a member, or prior thereto, which was a whole life certificate with disability and old age benefits. He did not make a

change in 1904, but under the by-laws of 1904 his rate changed, when he became 55 years of age, on June 25, 1916. From May 28, 1919, to April 1, 1923, no change occurred, as he retained his original certificate, except there was a reissue thereof on account of a change of beneficiary made necessary on account of the death of his wife, who was named as beneficiary in the original certificate issued to said Owen.

L. O. Harvey, a witness for appellant, testified by deposition to the following material facts uncontradicted: That he had lived in Dallas, Tex., for approximately 27 years; that he had been record keeper of tent No. 23 at Dallas, Tex., of the Maccabees from April 1, 1917; that his duties are now, and have been all along, as such record keeper, to keep a record of the payments made by the members of appellant benefit association, to look after the collections and the remitting of the monthly dues to the home office; that "my custom, as record keeper, was to report to my superior officers once each month on the respective monthly collections * * * about the middle of the month following the month in which the payment was made. * * * I retained copies of these reports * * * made to the home office monthly." The witness further testified: "This book (referring to the receipt book said Owen carried, in which were entered payments made by him of assessments), I guess evidences truly the dates when payments were made; for instance, it shows that on May 12, 1922, he paid for March and April, and shows that on September 25, 1922, he paid for May, June, July and August, four months; that represents that he had gotten behind on those payments and came back on September 25th and paid them all up at that time." Said witness further testified: "Mr. Owen had paid his dues from the time he had originally become a member up to and including February 1923, when he failed to pay for March 1923 he evidenced that fact by an entry on the report * * * there is his record of membership and I made the red mark showing him not paid nor remitted for. When he failed to make the March payment I notified him of the fact that he had been suspended or ceased to be a member, I wrote him two or three times about it. * * * When he failed to make this March payment, I showed an entry on my books at that time evidencing the fact that he had ceased to be a member. I made an entry on his card here, as I do on all of them, and noted it on the report blank I forwarded to the home office. I then sent him several notices to come forward and pay. Had he come forward and paid, there would have been no question about his membership now."

The evidence further showed that there was created between said Owen and the wit-

ness Harvey quite a friendly relationship dating from about 1918. In reference to this, said witness testified: "Mr. Owen was a street car motorman and his run terminated near The Maccabees headquarters. Prior to his death he had followed the custom of coming around and staying with me from time to time for two or three years—more in the latter years than in the first. At that time or during that time he had occasion to discuss with me his financial situation, and his insurance and his family affairs; he spoke about those items."

As to when and how the payment of assessments were made when not received by the witness Harvey, as clerk of appellant's local tent No. 23, from Owen, before the report had to be made to the home office of collections made by said clerk, especially on occasions when 2 and 4 months' assessments were paid long after said assessments became due, as testified to by said Harvey, said witness testified: "As to whether I testified * * * that at times his dues would be allowed to accumulate and he would drop in then and pay those dues, several months at a time, or two months at a time, I will say I just testified that he paid at certain times for certain months. There was only one year that he was ever behind with his dues, to any extent. That was the year 1922. As to what was said between he and I with reference to his paying two or three months at a time, when he got ready to go to Tennessee * * * he told me that it might not be convenient for him to pay his dues every month * * * and for me to take care of his dues until he notified me he wanted to discontinue. That was in 1922. * * * After this request to take care of him * * * with reference to remitting his dues each month to the home office * * * I remitted the dues for him each month, depending upon him to reimburse me at a later date. My report to the home office did not show the fact that I was advancing the money for him. I never at any time during his lifetime advised them that I had any agreement with Mr. Owen to advance this money for his account and depended upon him for reimbursing me at a later date. The members "understood they had ten days in which to make the payments after the first, and prior to 1921 * * * my records show that he (Owen) never lapsed over the ten days. Under the law, he had to the tenth of the succeeding month in which to pay dues for the preceding month."

After Owen went to Tennessee, he paid his assessments by mail up to and including the assessment for February, 1923; prior to 1923 appellant notified the record keeper of its different tents that, beginning January 1, 1923, they would proceed to collect full rating, beginning with rating No. 1 for that year, from the members who were being loaned one-half of the monthly rate; that im-

mediately on being so advised and directed said witness Harvey, as clerk of appellant's tent No. 23, at Dallas, immediately advised said Owen by mail that, beginning January 1, 1923, with assessment No. 1 for that year on his certificate, he would be required to pay the full monthly rate. In reference to this feature of the case, said Harvey testified: "I wrote Mr. Owen and told him of the change, and told him I would not remit any further dues for him unless I heard from him. That notice went out to him some time in the year 1922, but I don't remember how early in the year I gave that notice. I heard from him in reply to my letter. I do not have that letter * * * He (Owen) had previously had an understanding that I was not to pay his increased rate * * * unless he advised me. * * * He never did advise me to advance the money for the March payment. * * * I sent him several notices with reference to the March assessments, and had no reply from him with reference thereto. * * * He never told me he had concluded definitely to discontinue it, only this—he said that if I did not hear from him not to advance these rates, and I reminded him of that fact when I wrote him of this change and when I had not received the January dues, I wrote him again." As the entry in the individual receipt book of said Owen under date of December 15, 1922, indicating that Owen paid for the months of September, October, November, and December on December 15, 1922, said witness testified that, prior to making the entry of December 15, 1922, "I had remitted to the home office the amount due them, had made those remittances from time to time when they fell due and on December 15th when he (Owen) paid this money to me, he was merely refunding to me the money I had already advanced; the same situation was true in reference to the other payments that were delinquent." Said witness further testified: "I will be able without much trouble to get access to copies of my report made to the company covering September to December 1922, inclusive. I do not have those with me. None of those reports show that Mr. Owen was delinquent. He asked me to send in the money for him and I knew he was a man of his word and I sent them in for him. He relied upon me. He had known me for a good while. He knew I was the record keeper of the Lodge."

Following are the facts established in support of said plea B, supra, testified to by Ethel Owen Deer by deposition: That the deceased, Owen, was an uncle of witness. He was 62 years of age at the time of his death, September 4, 1923. During the month of October, 1923, witness received through the United States mail at Nashville, Tenn., a package addressed to James Littleberry Owen. The mail consisted of certain documents purporting to be from appellant posted

at Detroit, Mich. The documents inclosed, being circular in form, related to proceedings for transferring certain members to the legal reserve plan, and from said documents the following brief extract is made, same being all of any material import to this appeal:

"Dear Sir Knight: An increase in rates on your present certificate was effective October 1, 1923.

"During the month of October you are permitted to transfer to the Legal Reserve Plan without medical examination. The Legal Reserve Certificates provide for many valuable features not contained in your present certificate, and affords you a more favorable cost. The Legal Reserve Certificates provide for cash surrender values, extended insurance, specific accident benefits, and are full participating.

"Your rates for Transfer to the Ordinary Life Legal Reserve Plan

| | |
|---|---|
| $900 Certificate | $500 Certificate |
| Rate $6.30 monthly | Rate $3.50 monthly |

$——— Certificate
Rate $—·—— Monthly

"The maximum amount you can transfer for to the Legal Reserve Plan is $900.

"Your new certificate is effective October 1, 1923, and this application for transfer to Legal Reserve Plan requires your immediate attention. Fill in the application blank and return with your old certificate and check for at least one monthly rate in the enclosed addressed envelope."

The application blank above referred to contains, among other things, the following provisions:

"I understand that in making this transfer, any disability benefits provided for in the new certificate which I am now making application for, will in no case be allowed for any condition or disability existing at the present time, and that any waiver pertaining thereto affecting my present certificate shall also apply to the one now applied for. I do hereby surrender my said certificate to The Maccabees for cancellation, and I do hereby, for myself and my beneficiaries, and for anyone else claiming any right in, through or on account of said certificate, release The Maccabees from any and all liability thereunder. I further agree that this application for transfer shall become a part of my original application for member. I understand that I am to continue a member of said tent and pay tent dues to the record keeper as I have done in the past."

It was further established without conflict that, when members of appellant association wished to transfer from the "term" plan, under which certificate No. 17957 was issued to deceased, Owen, to the legal reserve plan, such member executed an application therefor; that, on such application being received at appellant's home office, the record of the member making same was examined, and, if it was found that such member was in good standing, the application would be approved, and a new certificate issued upon the legal reserve plan, but, if the member was not found in good standing and could not be transferred, his application would be refused. When deceased, Owen, became a member of said association, there was only one kind of certificate issued, viz. whole life certificate, with disability and old age benefits. In 1916 new forms of protection were introduced, carrying ratings based upon American Experience Tables, and all members admitted upon these rates were paying an adequate rate, and again 1919 additional forms were provided, but in 1922 all members, including deceased, Owen, were re-rated. These rates did not become applicable until October 1, 1923.

■ What is to be understood by the following portion of the testimony of the witness Harvey: "Had he come forward and paid, there would have been no question about his membership now," becomes a pertinent inquiry in view of the stress placed thereon by appellees in support of their contention that appellant had waived its right to claim a forfeiture on account of failure to pay the March, 1923, dues in the respects alleged by them in their plea of confession and avoidance. The witness must have had in mind that the payment of said dues would constitute a waiver of the forfeiture of the benefit certificate; and, further, that he would have accepted the payment of all past-due assessments, as it would have required that or some other inconsistent act to have constituted a waiver of the forfeiture that had become absolute under appellant's by-laws. Calhoun et al. v. The Maccabees (Tex. Com. App.) 241 S. W. 101. Certainly the benefits that were tendered to said Owen by virtue of the subsequent notices sent to him after his suspension did not on the death of said Owen pass from him to his beneficiary; this is in consonance with the following holding in the case of Tabor et al. v. Modern Woodmen of America (Tex. Civ. App.) 163 S. W. 324, in which writ of error was denied, viz.: "Where an assessment was levied November 17, 1910, and under the terms of the benefit certificate. the member had until the last day of December, 1910, to pay such assessment, failure to pay on or before December 31, 1910, forfeited the certificate, and the beneficiaries were not, after decedent's death, allowed 60 days, given to the member under a by-law, after such forfeiture to make the delinquent payment and reinstate the policy."

. ■ Even if it should be conceded that appellant had established a custom by which said Owen had the right to permit an assessment to remain unpaid for a period of 3 months from date payment was required to be

made to make payment of such assessment within 4 months from due date, without his certificate being forfeited, nevertheless said Owen, having failed to pay said March, 1923, dues within the period of 4 months from the date same became due, March 1, 1923, he became suspended and his certificate forfeited under the following provisions of one of appellant's by-laws: "A life benefit member failing to pay a monthly rate, per capita tax, or additional assessment within the month on the first day of which it is due, shall stand suspended without notice from all rights of life benefit members and from all privileges and benefits of his tent. A member under suspension for any cause, except when suspension is for a definite period as a matter of discipline, forfeiting absolutely his rights to participate in the benefit funds of the association, or the fraternal privileges of his tent." Said Owen having died during his suspension, his beneficiary, appellee, Mrs. Virginia F. Palmore, had no interest in the certificate sued on, although it should be further conceded that under another by-law said Owen was given the right to be reinstated on payment of all his delinquent dues covering a period of time which had not expired at the time of his death. Tabor v. Modern Woodmen of America, supra; Bailey v. Sovereign Camp, W. O. W., 116 Tex. 160, 286 S.W. 456, 47 A. L. R. 876. The following provision of section 317, supra: "If for any reason it shall appear that a member who is liable under the provisions of this section for the payment of the increased monthly rate has not paid the same, when such discovery is made he shall pay same upon demand. Should his death occur before such payment is made the amount remaining due in consequence of such failure, together with six per cent. interest, shall be deducted from the amount due the beneficiary," we think applicable only to those members who became liable under the provision of said section 317 for the payment of the increased monthly rate. This by-law as to the payment of the increased monthly rate, by its language, "shall pay after said October 1, 1923 rates at their attained age," did not take effect as to said Owen until October 1, 1923; he, having been admitted as a member of appellant association prior to August 1, 1904, and died on September 4, 1923, never became subject to said increased rate, and was not therefore entitled to the protection of this provision at the time of his death. As to the effect that should be given to the above provision of said section 317, supra, appellees contend that: "Under the certificate and the by-laws of appellant, appellant had no right to forfeit the certificate of the insured for non-payment of premiums, but that any such delinquency operated as a charge against the amount due upon the certificate at maturity, together with interest thereon at the rate of six per cent per annum."

Given the effect thus contended for by appellees, it would have to be held that the provisions of appellant's by-laws providing for an immediate suspension upon failure to pay dues was suspended so far as the particular class named in this section was concerned. This we cannot agree to, as the above provision was not intended to impair the full force and effect of the provisions of appellant's by-laws suspending members who neglected or failed to pay their dues promptly and in accordance with its by-laws. However, if appellees' contention in this respect should be sustained, the benefits of said provisions cannot be successfully asserted by appellees for the purpose of preventing the application of the provisions of appellant's by-laws, suspending members for failure to pay their dues, etc., in accordance with requirements of same. This because deceased, Owen, was not in the class designated in said section 317, he having died before the increased rate became effective, viz. October 1, 1923; hence appellees are not in position to urge that said Owen was entitled to the protection accorded members of appellant association under the terms of said by-law.

The relationship created between deceased, Owen, and Clerk Harvey by the loans of money made by said Harvey to Owen from time to time in the several sums of money advanced by Harvey to pay Owen's dues and the remittance thereof without the knowledge of appellant, under the undisputed facts, was purely a personal matter between said Owen and Harvey, and not an act within the scope of the authority of said Harvey as the agent of appellant, as the only authority conferred by appellant upon said Harvey as clerk of its local tent No. 23 was to collect monthly dues from the members of said tent, make monthly remittance thereof to appellant at its home office, and to keep a record of the payment of such dues. Therefore, the payment of dues by said Owen through the advancement of money made by said Harvey was a matter of personal accommodation for the use and benefit of said Owen, and prevented the monthly assessments' for which such payments were made from becoming delinquent. Therefore at no time did said Owen pay delinquent dues whereby appellant waived its rights to enforce against him its by-laws providing for the suspension of a member and the forfeiture of his certificate because of failure to pay monthly dues in accordance with its by-laws.

The burden of proof was upon appellees to show that their plea of confession and avoidance was true. There was no attempt upon the part of appellees to prove that the deceased, Owen, had paid the March, 1923, dues, or dues for any month thereafter up to September 4, 1923, date of his death, a period of 6 months and 4 days. Had the trial judge given to the unimpeached testimony of the

witnesses Harvey and Hall the probative force and effect same was logically and inherently entitled to, the facts thereby established without contradiction, considered in connection with the benefit certificate declared upon and the by-laws of appellant introduced in evidence, could have led to but one result, viz. the rendition of judgment in favor of appellant. The burden of the proof that rested upon appellees to establish, by a preponderance of the evidence, the truth of the material allegations contained in their plea of confession and avoidance, presenting the issues A and B, supra, was not discharged by the testimony of said witnesses being peremptorily rejected, as the necessity still remained for appellees to establish either one of said two sets of facts so alleged, in order for them to be entitled to judgment against appellant. Appellees having failed to discharge this requirement as to either one of the above issues in any degree, the district court erred in rendering judgment in favor of appellees for any sum. Supreme Council, A. L. H. v. Story, 97 Tex. 264, 78 S. W. 1.

This case having been fully developed, and it appearing from the uncontradicted evidence that appellees were not entitled to recover against appellant, the judgment of the court below is therefore reversed, and judgment rendered in favor of appellant; that appellees take nothing by their suit; and that appellant recover from them all costs in this cause incurred, both in this and in the trial court.

Reversed and rendered.