## SOUTHIE HOUSE v. GRAND LODGE, COLORED KNIGHTS OF PYTHIAS OF TEXAS.

### No. 1172.

Court of Civil Appeals of Texas. Waco.
March 31, 1932.

Rehearing Denied April 21, 1932.

Tirey & Tirey, of Waco, for appellant.

Allan McDonnell, of Waco, for appellee.

ALEXANDER, J.

Southie House brought this suit against the Grand Lodge, Colored Knights of Pythias of Texas, a fraternal benefit society, to recover

on a certificate of insurance issued by the defendant on the life of Berry Clark in which the plaintiff was named as beneficiary. The defense was that the policy had lapsed for nonpayment of dues. A trial before the court resulted in a judgment for the defendant. The plaintiff appealed.

The assessments or premiums on the policy were payable quarterly on the 1st day of January, April, July, and October. The insured paid his dues up to and including September 30, 1930, but failed to pay his dues for the quarter beginning October 1st. He died November 14, 1930. The appellant concedes that the dues maturing October 1, 1930, were not paid, but contends that the policy did not lapse because under the by-laws the insured had the right, upon his failure to pay the October dues when they matured, to thereafter pay on January 1, 1931, the dues maturing October 1st, together with the dues maturing January 1, 1931, and thereby have his insurance remain in force. In other words, the appellant contends that although the policy had lapsed at the date of the death of the insured, since, at that date, the time in which he had the right to have the policy reinstated had not expired, the beneficiary was entitled to recover on the certificate.

Appellee's by-laws, which became a part of the contract in this case, provided in part as follows:

"Art. 2, Sec. 1: Grand Lodge * * * premium against every member of the Order shall become due and payable on the first days of January, April, July and October of each year and each and every member failing and refusing to pay said * * * premium on or before the first days of February, May, August and November of each year shall ipso facto stand suspended from all benefits of the endowment department and all other departments of the Order during the quarter in which said member shall fail and refuse to comply with the provisions of this section, and no liability incurred during that quarter by reason of the death of a member shall be a liability against the endowment department or any other department of the Grand Lodge. * * *"

"Sec. 2: Suspension from benefits as used herein means that the member having failed to pay Grand Lodge tax, burial tax, endowment or premiums, will be denied any benefit which would accrue to said member or his beneficiary if he was in good and financial standing, but does not mean that he has been suspended from the Lodge, and in no way affects said member other than his certificate is for that quarter, lapsed and of no effect, and said member or his beneficiary would not be entitled to recover benefits of any kind or character."

"Article 3, section 1: Any member who has permitted himself to become suspended from benefits, may place himself in good and financial standing with the subordinate lodge and the Grand Lodge, and revive his certificate of insurance at any time between the first and last day of the first month in the next succeeding quarter by paying to the Grand Lodge through the Master of Finance of his lodge, all delinquent quarterly tax, endowment or premiums, together with current tax, endowment and premiums for the ensuing quarter. * * *"

We think it clear from the foregoing provisions of the by-laws that it was intended by the parties that the failure of the insured to pay his dues within thirty days after the first day of the quarter in which same was due worked an absolute forfeiture of the certificate, and that from and after that time until the insured was actually reinstated, neither the insured nor his beneficiary had any rights thereunder. The fact that the insured has the right to pay such dues at the termination of such quarter, and thereby have his insurance reinstated, did not keep the insurance in force during such quarter. Tabor v. Modern Woodmen of America (Tex. Civ. App.) 163 S. W. 324 (writ ref.); The Maccabees v. Palmore (Tex. Civ. App.) 33 S. W. (2d) 243, par. 2.

The appellee further contends that since the insurance company retained the name of the insured on its rolls, after the policy had lapsed, and forwarded to the secretary of the subordinate lodge blank receipts to be used in the event the insured paid the dues that were in arrears, this was a recognition on the part of the appellee that the insured was in good standing and his insurance in force and was a waiver of the right to declare a forfeiture. We cannot agree with this view. The insured remained a member of the lodge notwithstanding his insurance lapsed, and his name was properly retained on the roll of membership. He had the right to have his insurance reinstated if he paid his premiums at the termination of the quarter, and appellee's conduct, in preparing and forwarding blank receipts to the secretary of the local lodge to be used in the event the insured elected to reinstate his insurance as provided in the by-laws, was in no wise inconsistent with a forfeiture of the insurance. The insured having died during suspension, the beneficiary was not entitled to a recovery herein.

The judgment of the trial court is affirmed.