CELIA G. CHANDLER, APPELLEE, V. ROYAL HIGHLANDERS, APPELLANT.

FILED MAY 5, 1917. No. 18772.

1. **Insurance**: BENEFICIAL ASSOCIATION: AGENCY: PRESUMPTION. The secretary of a local lodge or circle who collects dues from the members of a fraternal beneficiary association and remits to the association is the agent of the association, and the law presumes that he informs his principal of what he does in its service.

2. ———: ———: PAYMENT OF DUES: WAIVER. If such association adopts a custom of receiving payment of dues after the day named in the contract for such payments, and thereby leads the assured to believe that his policy will not be forfeited if he pays in accordance with such custom, the association thereby waives the right to forfeit the policy for delay of payment which is tendered in accordance with such custom.

3. ———: ———: ———: CUSTOM. But if payments are duly made for the insured by the local lodge or its secretary as a loan to the insured, at his request, the fact that the insured does not return such loan to the lodge or its secretary as agreed by him will not establish a custom to extend time of payment on the part of the association.

4. ———: ———: ———: PRESUMPTION. If the lodge or its secretary advances the payments when due for the insured, and afterwards receives payments thereof from him, the presumption, in the absence of evidence, is that it was at the request of the insured, and as a loan to him to enable him to comply with his contract.

5. ———: ———: FORFEITURE: WAIVER. Under such circumstances. the association cannot be held to have waived the right to declare a forfeiture when so provided in the contract, if payments are not forwarded to the association within the time specified therein.

APPEAL from the district court for Lancaster county: P. JAMES COSGRAVE, JUDGE. *Reversed.*

*Hainer & Craft* and *A. W. Lane,* for appellant.

*B. F. Good, C. Petrus Peterson* and *R. W. Devoe, contra.*

SEDGWICK, J.

This is an action by the beneficiary to recover $2,000 on a certificate of life insurance issued December 8, 1905, by

defendant, a fraternal beneficiary society, to plaintiff's husband, Charles D. Chandler. The certificate provided for the payment of an assessment of $2.40 on the first day of each month, and that, for failure to pay it on or before the first day of the succeeding month, the member should stand suspended from all benefits of the society. Chandler, at the time of his death, which occurred May 28, 1908, had not paid the assessment due April 1, 1908, and delinquent May 2, 1908. Plaintiff pleaded that defendant had repeatedly accepted and retained assessments long after they had become delinquent; that it had induced Chandler to believe assessments need not be paid promptly; and that defendant had thereby waived the right to insist that Chandler was suspended for failure to pay the April assessment on or before May 1, 1908, Chandler having died within the time usually allowed him in which to pay his past-due assessments. The defense was that Chandler's assessments, with the exception of the one due April 1, 1908, had been promptly received at the head office of the society, but under an arrangement with the secretary of the local lodge the latter, out of his own funds, had in some instances advanced Chandler's assessment when due and was subsequently reimbursed by him; that the local secretary by express terms of the society's edicts, which are parts of the insurance contract, had no authority to waive the provision requiring prompt payment of assessments; and that the chief officers of the society had no knowledge that assessments were not paid by Chandler when due. At the close of the testimony each party requested a peremptory instruction. From a judgment on a directed verdict in favor of plaintiff, defendant has appealed.

Did defendant, by its course of dealings with Chandler, waive prompt payment of the April assessment? It is a fraternal beneficiary society, and has at Hartington a subordinate lodge or castle of which Chandler was a member. Members were required to pay assessments monthly to the secretary of the local castle, and it was his duty to report and remit all assessments to the chief secretary

of the society by the fourth day of the succeeding month. At least six times within a year, Chandler had failed to pay his assessment before it became delinquent. The assessement due February 1, 1908, was not paid by Chandler until April 1, 1908, 31 days after it had become delinquent. Chandler died May 28, 1908, the April assessment, which became delinquent May 2, 1908, not having been paid.

Testimony tending to prove the facts narrated would sustain a finding that defendant waived prompt payment, unless the defense already outlined was established. On behalf of defendant the local secretary testified, in substance: That at least six times within a year the witness had advanced out of his personal funds the money to pay Chandler's assessment, and had remitted it to the head office with his regular monthly report and remittance. He had remitted Chandler's February assessment with the report of March 3, 1908, and had been repaid by Chandler April 1, 1908. He did not deliver the receipt to Chandler until the latter paid the sum due. Chandler gave the witness a check April 1, 1908, to pay the February and March assessments. The April assessment was not paid, and in his report the local secretary marked Chandler suspended.

A waiver must be pleaded and proved by the plaintiff, and the defendant's answer to it is either a general denial or a specific denial showing what the. facts were. This needs to be borne in mind, because, though certain presumptions might arise in favor of the plaintiff touching waiver, the burden of proof is always upon her. The waiver pleaded is that the defendant is estopped to claim a forfeiture according to the terms of the policy by its course of dealing with the deceased; that defendant, by continuously accepting payments after due, without declaring a forfeiture, would naturally lead the insured to believe that a strict compliance with the terms of the policy was not required. This calls upon plaintiff to plead and prove the course of dealing which would lead the deceased, as a

101 Neb.—15

reasonable man, to believe that payments need not be made when due; that he relied thereon; and that he was thereby misled. To prove the waiver the plaintiff must prove the custom of receiving the payments after due; that the payments so made were received and retained by the defendant company with knowledge that they were past-due payments. These propositions of law will not be disputed.

In the case at bar, unlike the cases cited, money due for assessments always came to the company when due. If, when Dr. Eby sent money to the defendant, he had informed them that the Chandler assessment was paid by him out of his own funds, he having loaned it to Chandler, it would not create, or tend to create, an estoppel or waiver. You cannot assume belated payments when, as to the company, there were none, and an essential fact to create the waiver must be the retaining of assessments paid after due. This is illustrated in defendant's brief by stating that oftentimes it happens that local lodges will raise a fund to help out members unable to pay their assessments on time. The local lodge sees that the company gets its payment for such member when due, just as Dr. Eby did. It must frequently happen in such cases that the local lodge will itself refuse further aid. It is stated that the courts in no instance have allowed this to create a waiver by the company itself; it always having received the assessments when due. When the company received its money the first of the month, no matter by whom paid, its business with Chandler was ended for that month. If, when Eby advanced the money, he told the company the facts, it would have had a right to suppose it was a loan. When afterwards he collected the money from Chandler he would be acting only in his private capacity and in no sense as the agent of the company. If Eby loaned the money to Chandler, then he acted as Chandler's agent in applying the money as payment of Chandler's dues. If their agreement was that Eby should make these payments for Chandler when due, and that Chandler should afterwards reimburse

him, the transaction was a loan by which Chandler caused the payments to be made when due.

It may be said that, considering the testimony, a jury could reasonably find that Chandler had no knowledge that his assessments were paid by the secretary when due. But what his knowledge was must be a presumption arising from admitted facts, there being no direct evidence as to his knowledge. A jury will not be permitted to find contrary to the legal presumption. If there were no decisive presumption either way, then, the burden being upon the plaintiff, upon that point the finding must be against her. The law will presume that Chandler knew the rules of the society, and when he must make his payments or forfeit his rights, and that he would follow self-interest. The law will presume that he knew that Eby could not make a waiver for the society for his benefit. Knowing that, the law will presume that he knew or believed either that Eby had remitted for him, or that he was himself guilty of laches. The law will presume, also, where it is a pure question of fact, that all persons will endeavor to do their duty, will meet their obligations and observe their contract; that one man will not pay the debts or the obligations of another, except at the other's instance or request. To say that Dr. Eby did so is to do violence to common experience, from which all presumptions arise. Not once in a thousand times would a man in Dr. Eby's place make advancements out of his own pocket for the accommodation of another without informing him. Such being the presumption, it follows that Eby, having made the advancement, did it at the instance of Chandler. The alternative presumption that Chandler believed that the society, knowing that he had not paid, was waiving time of payment, cannot be indulged, because of the other presumptions above named, and especially the one that Eby would not make personal advancements without either being requested or at least informing Chandler that he did so. The presumption must prevail that Chandler knew that Eby was making these payments for him when

due.    It is said that Dr. Eby retained the receipt until he received the money.    That does not alter the fact of payment, and does not affect the presumptions just alluded to, because common experience is that any man, paying the obligations of another, and procuring a receipt, would always, as a matter of prudence, retain the receipt until he should be repaid his advancement.    The evidence shows that when Dr. Chandler repaid Dr. Eby he did it in a personal check to him, not one running to him as an official.    If Dr. Chandler had believed that Dr. Eby had power to waive payments when due, the case might be different; but we are not permitted to indulge the presumption that he believed that.    He was bound to know the contrary.

The plaintiff objects that certain evidence of Dr. Eby was incompetent; but the evidence conceded to be competent, with the presumptions of law that arose therefrom, establishes that Dr. Eby advanced the money for Dr. Chandler upon the latter's request and as a loan.    The company knew this if it was bound to know what its agent knew.    With this loan Chandler caused his payments to be made when due.    This loan was the private business of Chandler and Eby, and was not the company's business.    It received its money when due, and by so doing waived none of the terms of its contract.

The judgment of the district court is reversed and the cause remanded.

REVERSED.

MORRISSEY, C. J., and LETTON, J., concur in the conclusion.

ROSE, J., dissents.