JENNIE WHITEHORN, APPELLANT, v. ROYAL ARCANUM, APPELLEE.

FILED NOVEMBER 20, 1936. No. 29724.

*Fradenburg, Webb, Beber, Klutznick & Kelley,* for appellant.

*Olaf W. Osnes, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY and CARTER, JJ., and MUNDAY, District Judge.

GOOD, J.

This is an action upon a fraternal benefit certificate, in which plaintiff is named as beneficiary. Defendant denied liability, alleging that plaintiff's husband, who had been a member of the defendant order, had been suspended and had ceased to be a member for several months prior to his death. At the conclusion of all the evidence, the trial court, on motion of defendant, directed a verdict for it. Plaintiff has appealed.

The Royal Arcanum is a fraternal benefit association, organized under the laws of. Massachusetts, with its headquarters in Boston. The supreme governing body of the order is known as the supreme council. The constitution and laws promulgated by the supreme council provide for grand lodges or councils and for local councils. One of these local councils located at Omaha, Nebraska, is known as Union Pacific Council No. 1069. William B. Whitehorn, deceased husband of plaintiff, became a member of this

local council, and a benefit certificate was issued to him in which his wife, the plaintiff, was named as beneficiary. The face amount of the certificate was $3,000. The form of certificate issued to Whitehorn provided for monthly payments or assessments. There were also quarterly dues payable to the local council. For some years prior to his death the monthly assessment was $4.86. Whitehorn paid his assessments up to and including January, 1933, but failed to pay his February assessment. This was advanced and paid for him by the local council. He did not reimburse the local council for this advancement and did not pay the March assessment, nor did the local council advance it for him, and on March 31, 1933, Mr. Whitehorn was suspended from membership in the order and was never reinstated and never made application for reinstatement. The evidence shows that no assessments were levied against him after March, 1933, and that no payments were made therefor.

It appears that on the 17th day of August, 1933, Mr. Whitehorn left a check for $37.02, payable to the defendant, with some employee of the Elks Club in Omaha, and that the collector for the local council received this check and retained it until after Mr. Whitehorn's death. Plaintiff contends that there had been a custom to permit the payment of assessments at irregular intervals and after the time when they were actually due, and that Mr. Whitehorn did not know of the claimed suspension and relied on the custom of defendant in receiving payments long after they were due and at irregular periods, and that defendant, therefore, waived the right to insist upon strict enforcement of the rule for suspension.

It is conceded that the rules of the order provide for the payment of monthly assessments during the month for which they are made, and that if, at 10 o'clock p. m. on the last day of the month, the payment is not made, then the member is automatically suspended. It is also provided that after the member has been suspended he may be reinstated by making application therefor, paying all arrearages, dues and assessments, and, under certain conditions, is required

to pass a satisfactory medical examination. The by-laws provide that a local council may, if it so elects, pay the assessments of a member, or advance them for him, but such action is not required.

The evidence shows that the payments of assessments made by Mr. Whitehorn had been at irregular intervals, and that sometimes he would be two or three or four, and possibly more, months in arrears. The evidence also shows that the local council advanced his assessments; that the amount payable to the supreme body was remitted each and every month for him; that he was kept in good standing, and that he would reimburse the local council from time to time for the payments which it had advanced. It appears that the local council had a general fund, in addition to the assessments which were required for the insurance feature, and it was from this fund that advances were made for members. Inferentially, it appears that early in 1933 the local council was running low in its general fund; Whitehorn did not pay his February assessment, and the local council advanced it for him. He had not reimbursed the local council for the advancement so made. He failed to pay his March assessment, and the local council did not advance it for him. The record clearly shows, beyond question, that Whitehorn was suspended on the 31st day of March, 1933. It also appears that he was never thereafter reinstated and never made application for reinstatement. Under the rules and by-laws it would have been necessary for him to submit to a medical examination as a condition to reinstatement. Plaintiff contends that Mr. Whitehorn was not notified of his suspension. The evidence fails to show that he was notified at the time that he was suspended. There is no by-law or rule requiring notice. The by-laws provide that *ipso facto* suspension occurs if payment of assessment is not made before 10 o'clock p. m. on the last day of the month for which assessment is made. There is evidence, however, that at least as early as June, 1933, Mr. Whitehorn conversed with another member and an officer of the local council about his suspension, in which he stated,

in effect, that within a short time the rate of his assessment would be increased, and he indicated that he did not desire reinstatement.

It appears that in August, 1933, Whitehorn and his wife contemplated a visit to Chicago and that prior to leaving he drew his check for $37.02, which would have been sufficient to pay his assessment for the months of February to August, inclusive, and his local council dues. This check was left at the Elks Club in Omaha with one of the employees, who gave Mr. Whitehorn a receipt therefor. The employee of the Elks Club was not a member or officer of the Royal Arcanum, but the collector of the local council kept a desk and maintained desk room at the Elks Club, and, as stated, it was the custom of members to pay their assessments to some of the employees of the Club who deposited them, together with the member's receipt book, with the collector, who would receive the payments and receipt therefor in the member's book. These payments were, ordinarily, turned over to the collector on the same day that they were deposited with the employees of the Elks Club. In this instance the collector did not receipt in the book for the $37.02 payment, but wrote to the supreme council for information as to what should be done with the check under the circumstances, and in a few days received an answer, stating that Mr. Whitehorn had been suspended and that it would be necessary for him to make application for reinstatement and to submit to a medical examination before reinstatement would be made. The collector, in the meantime, retained this check. Mr. and Mrs. Whitehorn made their trip to Chicago, and he died there on the 31st of August, 1933. The check, of course, was not returned to Mr. Whitehorn but was returned to Mrs. Whitehorn some time after his death.

Plaintiff contends that the evidence of the member and official of the local council, as to his conversation in June with Mr. Whitehorn, was not admissible but was hearsay evidence. We think the contention is untenable.

In *Ogden v. Sovereign Camp, W. O. W.,* 78 Neb. 804, 111

N. W. 797, it was held: "In an action against such association for the amount of a beneficiary certificate, where the issue is as to the good standing of the assured at the time of his death, the statements of the deceased tending to show his understanding of his standing in the order are admissible in evidence in favor of the association."

Plaintiff apparently relies on *Priest v. Business Men's Protective Ass'n,* 117 Neb. 198, 220 N. W. 255. A careful examination of the opinion in that case we think discloses clearly that it is not in point. In the instant case plaintiff · is not the personal representative of the deceased; she is suing in her own right and not in her representative capacity. Mr. Whitehorn clearly knew that he had been suspended and was charged with knowledge that the by-laws of the order required him to make an application for reinstatement and to pass a medical examination. He failed to comply with the requirements for reinstatement. These requirements are clearly set out in the by-laws, and the law charges him with following them strictly, as only by compliance therewith could he be reinstated.

In *Van Dahl v. Sovereign Camp, W. O. W.,* 130 Neb. 181, 264 N. W. 454, it was held:

"The by-laws of a fraternal benefit association, providing for the payment of assessments made during the month on a certain day and for suspension, without notice, of members in default, are self-executing, and provide a reasonable and necessary penalty for the enforcement of payment of assessments to a fraternal insurance fund.

"A member of a fraternal benefit association, who has been suspended for nonpayment of assessments, can be reinstated only in strict conformity with the by-laws in force at the time of reinstatement, and has no rights under his certificate until an actual reinstatement has taken place." A like rule was announced in *Fairbanks v. Sovereign Camp, W. O. W.,* 130 Neb. 654, 266 N. W. 60.

Plaintiff seems to lay stress upon the proposition that the collector of local council No. 1069 retained the check of Mr. Whitehorn until after his death, and that this amounts

to a waiver. We think the rule is that mere retention alone of one's check, in the absence of any other facts and circumstances indicating its acceptance, does not effectuate payment.

In *National Life Ins. Co. v. Goble*, 51 Neb. 5, 70 N. W. 503, it was held: "In the absence of an express agreement or other circumstances avoiding the operation of the rule, the remittance of a bank draft is not a payment in fact until the draft has been received, presented, and honored." Mr. Whitehorn's check was never presented for payment and never paid.

Plaintiff also contends that, since the local council had previously advanced payment of assessments for Mr. Whitehorn, the custom must be continued. In *Chandler v. Royal Highlanders*, 101 Neb. 223, 162 N. W. 642, it was held:

"If such association adopts a custom of receiving payment of dues after the day named in the contract for such payments, and thereby leads the assured to believe that his policy will not be forfeited if he pays in accordance with such custom, the association thereby waives the right to forfeit the policy for delay of payment which is tendered in accordance with such custom.

"But if payments are duly made for the insured by the local lodge or its secretary as a loan to the insured, at his request, the fact that the insured does not return such loan to the lodge or its secretary as agreed by him will not establish a custom to extend time of payment on the part of the association.

"If the lodge or its secretary advances the payments when due for the insured, and afterwards receives payments thereof from him, the presumption, in the absence of evidence, is that it was at the request of the insured, and as a loan to him to enable him to comply with his contract.

"Under such circumstances, the association cannot be held to have waived the right to declare a forfeiture when so provided in the contract, if payments are not forwarded to the association within the time specified therein."

Applying the rules of law established by this court to the facts disclosed by the record in this case we are compelled to hold that Mr. Whitehorn was regularly suspended, was never reinstated, was not a member at the time of his death, and plaintiff had no right of action against the defendant.

The trial court properly directed a verdict for the defendant. Judgment

AFFIRMED.