HARTWIG, Respondent, vs. ÆTNA LIFE INSURANCE COMPANY OF HARTFORD, CONN., Appellant.

*May 23—October 3, 1916.*

*Insurance: When contract complete: Accident policy: Delivery: Acceptance: Credit: Death of assured before payment of premium: "Default" in payment: Evidence: Questions for jury: Deduction of unpaid premium from recovery: Appeal: Modification of judgment: Costs.*

1. If an application for an insurance policy is accepted and the policy is, either by the company directly or through its agent, deposited in the postoffice addressed to the applicant, who is thereafter to pay the premium therefor, and nothing to the contrary is expressed in the policy, the minds of the parties are presumed to have met and a binding contract of insurance is thereby made.
2. That credit for the first premium was extended to the assured may be shown by the circumstances characterizing the transaction and the general course of business as conducted by the insurance company through its agent.
3. The unexplained delivery of a policy without payment of the premium is *prima facie* proof of an extension of credit.

Hartwig v. Ætna L. Ins. Co. 164 Wis. 20.

4. Although there was no direct contradiction of the testimony of an agent that he told the assured that an accident policy would not go into effect until the premium was paid, yet, there being circumstances bearing on the credibility of such testimony, a finding by the jury that the assured (who was accidentally killed before paying the premium) and the agent did not agree that the policy should not take effect until such payment, is *held* not clearly wrong.

5. An instruction to "collect and report" sent with the policy to the agent, who promptly sent the policy by mail to the assured without prepayment of the premium, did not preclude the completion of the contract by such delivery of the policy,—the jury having found that credit was extended to the assured.

6. The fact that the policy was sent to the assured by registered letter, a receipt for which was demanded, and with direction for return if not called for in five days, does not necessarily show that the delivery was conditional or the contract incomplete, where it appears that the letter remained in the delivery office for some weeks to the knowledge of the agent, who did not order it back but wrote to the assured to send on the premium.

7. The fact that the policy was sent to the assured without prepayment of the premium and with a letter asking for prompt payment was sufficient to warrant submitting to the jury the question whether there was an extension of credit to the assured which relieved him from the obligation to pay until after he received the policy; and evidence as to previous dealings with the assured and others and the general manner of doing business through the agent was competent upon that question.

8. Where an accident policy was sent to the assured by mail but remained in the delivery office for some weeks, during which time the assured was accidentally killed, evidence as to what the assured had said to members of his family and to the clerk at the postoffice in respect to the policy, during the period of delay, was competent, as part of the *res gestæ*, upon the questions whether he intended to accept the policy and whether his delay was for the purpose of postponing payment of the premium.

9. Where an insurance company issued a policy upon application of the assured and sent it to him by mail, trusting him to pay after receipt thereof, and he did not repudiate his offer to take it, he became obligated to pay therefor and the policy became operative.

10. Where credit was extended to the assured he was not in default within the meaning of a provision in the policy to the effect that in case of default in payment of any premium the policy would

not be in force during the period of default so as to cover any loss sustained during that period.

11. A premium for which credit had been extended and which was unpaid at the time of the death of the assured should be credited on the indebtedness of the insurer under the policy.

12. The matter of deducting an unpaid premium from the amount recovered on an insurance policy not having been brought to the attention of the trial court, the deduction is made on appeal without taking account of interest thereon and without affecting the costs.

APPEAL from a judgment of the circuit court for Ozaukee county: MARTIN L. LUECK, Circuit Judge. *Modified and affirmed.*

Action by the beneficiary in an accident insurance policy to recover thereon.

The claim of plaintiff was that defendant, prior to September 12, 1914, issued to Max H. Hartwig one of its accident insurance policies, in which she, his wife, was named as beneficiary, insuring him against accidental death in the sum of $5,000, the insured to pay the premium therefor in the customary time; that the policy was in full force on such date when the assured came to his death from a cause within the risks insured against; and that, in due course, all conditions precedent to her right to commence and maintain an action to recover on the policy were performed.

Defendant claimed, among other things, that the policy sued on was not issued on credit; that August 14, 1914, the deceased made application for the policy through the company's agent, A. M. Wagner; that, in due course, such policy was issued and sent to said agent for "collection and report;" that it was not to go into effect until acceptance thereof by the assured and payment of the premium; that the premium was not paid nor the policy accepted; but on the contrary the assured neglected and refused to pay the premium or to accept the policy and that it was not in force at the time he was injured resulting in his death.

The case turned on whether the policy was in force on the 12th day of September, 1914. It was the third policy of the kind issued by defendant to Mr. Hartwig, on applications made through the agent who took the last one. The first was issued July 23, 1908, and sent to the assured July 26th, thereafter, without payment of the premium. He paid part thereof August 24, 1908, and the balance September 24th, thereafter, as the result of some urging to meet his obligation. The second policy was issued pursuant to an application dated April 14, 1910. It was sent to the local agent at the city of Port Washington, Wisconsin, with directions to deliver on payment of the premium. The assured did not make the payment and the policy was returned. The last policy was sent to the assured by registered letter August 17, 1914. It was transmitted by agent Wagner, who had received it with directions to "collect and report." It was so sent as to require a return receipt with a five-day limit of delay at the delivery postoffice. The letter accompanying the policy asked for prompt payment of the premium so remittance to the company could be made without delay. The letter reached the delivery office at 9:30 a. m. August 18, 1914. Hartwig was duly notified on that day by the postmaster and notified a second time August 20th, thereafter. Later he was notified several times by telephone of the presence of the letter at the postoffice awaiting his application therefor. It was in the office September 12, 1914, when he came to his death. The postal clerk was permitted to testify that in one of the telephone conversations which occurred some days before his death, he requested retention of the letter, promising to call for it. The deceased was a physician and was very busy attending to calls, during office hours, all the time during which he neglected to take the letter from the postoffice. No authority was expressly given by defendant, or in its behalf, to hold the letter beyond the five-day limit. Hartwig was requested by a letter dated September 10, 1914, to send in pay-

ment of the premium. After his death the agent ordered the policy back. It was returned accordingly and sent to defendant. Wagner testified that, when the application was made, he informed the assured that the policy would go into effect as soon as the premium was paid. That was under objection that it was inadmissible under sec. 4069, Stats., and because whatever was said became merged in the written application. The policy contained a provision to the effect that in case of default in paying any premium, subsequent acceptance of the same would operate to revive the policy only as to any loss happening thereafter.

Upon evidence proving or tending to prove all the circumstances above indicated, and other evidence under objection, of statements made by the deceased, respecting the policy, to his son Earl, his daughter Mildred, the local agent, Mr. Adams, the postmaster and his clerk, indicating that, up to the time of his death he intended to call at the postoffice for the letter, and evidence, under objection, regarding payment of premiums by other applicants for insurance as well as the manner the assured paid for the first policy, the court submitted the cause to the jury. They found (1) that the assured and the agent did not agree that the policy should not take effect until the premium was paid; (2) that it was mutually understood between the assured and the agent that the latter need not pay for the policy until he received it; (3) that the failure by the assured to take the policy from the postoffice was not due to a purpose not to accept; and (4) that such failure was not due to an intention to postpone the time for payment of the premium.

Upon such verdict judgment was granted to the plaintiff.

For the appellant there were briefs by *Collins & Collins,* attorneys, and *Daniel F. Flannery,* of counsel, and oral argument by *Mr. Flannery* and *Mr. William B. Collins.*

For the respondent there was a brief by *William F. Schanen,* attorney, and *James D. Shaw,* of counsel, and oral argument by *Mr. Shaw.*

The following opinion was filed June 13, 1916:

MARSHALL, J.   A few well settled principles of law govern this case, if the findings are sustained by the evidence.

If a person applies to an insurance company for a policy of insurance, the application is accepted, and policy is unconditionally deposited in the postoffice, addressed to the applicant, either by the company direct or through its agent, he, later, to pay the premium therefor, and there is nothing to the contrary expressed in the policy, a binding contract of insurance is thereby made.   Richards, Ins. (3d ed.) p. 99, note; *Armstrong v. Mut. L. Ins. Co.* 121 Iowa, 362, 96 N. W. 954; *Triple Link M. I. Asso. v. Williams,* 121 Ala. 138, 147, 26 South. 19; *Commonwealth Mut. F. Ins. Co. v. William Knabe & Co. M. Co.* 171 Mass. 265, 50 N. E. 516; *Hartford S. B. I. & I. Co. v. Lasher S. Co.* 66 Vt. 439, 29 Atl. 629; *Bailey v. Hope Ins. Co.* 56 Me. 474; 1 Joyce, Ins. § 62.

Credit may be given for the first premium and, if not expressly given, it may be shown to have been given by circumstances characterizing the transaction and the general course of business as conducted by the insurance company through its agent.   *Tomsecek v. Travelers' Ins. Co.* 113 Wis. 114, 88 N. W. 1013; 1 Joyce, Ins. §§ 75–84.

The unexplained delivery of a policy without payment of the premium is *prima facie* proof of an extension of credit. 1 Joyce, Ins. § 85.   In *Washoe T. M. Co. v. Hibernia F. Ins. Co.* 66 N. Y. 613, the policy provided that the company would not be liable unless the premium was actually paid to it.   The policy was delivered without requiring payment. Payment was, thereafter, several times unsuccessfully demanded.   The policy was not canceled nor was the holder notified that it would be void unless payment was made.   The court held that the jury was justified in finding that the waiver of payment continued up to the loss and the company was liable.   In *Tomsecek v. Travelers' Ins. Co., supra,* this court reviewed many cases on the subject, holding that a gen-

eral agent of an insurance company may waive the time of payment of the first premium, notwithstanding a provision in the policy that it will not take effect in advance of payment. The policy here did not contain any such provision.   The adjudications cited by counsel for appellant, and quotations therefrom, which dealt with policies characterized by such a provision, are beside this case, and need not be referred to.

It is contended that, notwithstanding the verdict, there was no meeting of minds on the precise nature of the contract. While it is true that in making an insurance contract, the same as any other, it is essential that there shall be a meeting of minds; that does not mean that there must be an express agreement upon all details.   The acceptance by an insurance company of an application for one of its policies and an unconditional deposit in the postoffice of such a policy, properly addressed, involves all requisites of a meeting of minds. *Commonwealth Mut. F. Ins. Co. v. William Knabe & Co. M. Co., supra;* Richards, Ins. (3d ed.) sec. 79.   That applies particularly to the rate of insurance.   Under such circumstances, the minds of the parties are presumed to have met that the policy shall be as usual, and the rate the usual one, or a reasonable rate, or the same as before where the applicant has previously had a similar policy.   So there is no question but what there was the requisite meeting of minds here, unless the contrary appears from some circumstance yet to be considered.

It is contended that this case does not fall within the rule we have discussed because the deceased was told by the agent, when the application was taken, that the policy would not go into effect until the premium was paid.   The only evidence on that was given by the agent, under objection.   Waiving the question of whether the evidence was proper, under the rule prohibiting contradiction or variation of a written contract by parol, and whether it was proper under sec. 4069, Stats., it was a jury question as to whether any such circum-

stance occurred as the agent testified to, and the finding, in
respondent's favor, settled the matter.    True, there was no
direct contradiction of the agent's testimony, but there were
circumstances bearing on its credibility which appear in the
record and there were, probably, others which do not appear.
The trial judge had the advantage of seeing the witness and
hearing his testimony given, and came to the conclusion from
the whole situation that its credibility was so involved, that
the jury should be permitted to pass upon it.    The result is
not so clearly wrong, if wrong at all, as to warrant disturb-
ing it.

It is further contended that there was no efficient delivery
by mail to close a contract of insurance because the policy was
sent to the agent coupled with the condition that he should
"collect and report."    The instruction is not free from am-
biguity.    There is a strong probability that it did not differ
from the usual course where the policy is sent and charged to
the agent with the expectation that he will report collection on
it with other collections, make his remittance, and obtain his
credit.    True, there is no very definite evidence as to the cus-
tomary course of business, but there was enough to raise the
question in respect thereto.    On the whole, what was meant
by the instructions to "collect and report," in view of the fact
that the policy was, promptly, upon its receipt by the agent,
transmitted to the deceased without prepayment of the pre-
mium, is fairly involved in whether credit was extended, in
respect to which the jury found in respondent's favor.

It was further suggested that the policy was transmitted,
conditionally, because of its having been sent by registered
letter, demanding a receipt, and of the direction on the pack-
age to return if not called for within five days.    Whether
those circumstances evidence a condition of the deceased hav-
ing the policy, or merely a precaution against its going astray
and to secure evidence of its having reached his hand, is so
involved as to fairly fall within the subject of extension of

credit. The fact that the package remained at the delivery office for some three weeks after expiration of the five days, to the knowledge of the agent, and he acquiesced therein, by not ordering it back, and by writing to the assured to send on the premium, which appears by the evidence without controversy, rather indicates that the five-day return feature was not a condition, or, if it were, the condition was waived.

It is further contended that there was no evidence warranting the finding that there was an extension of credit to the deceased which relieved him from the obligation to pay the premium until he received the policy into his possession. What we have already said sufficiently answers that in favor of respondent. The fact that the policy was transmitted in advance of the premium being paid, was sufficient, of itself, to warrant submitting the matter to the jury. The letter accompanying it, asking for prompt payment, certainly suggests that deceased was trusted to pay after receiving the policy. There were many other circumstances, including the history of previous dealing with the deceased and others, and the general manner of doing business through the agent. We will not take time to go into all the details. The evidence was all competent, in our judgment, as circumstantially explaining the transmission of the policy in advance of payment.

There was evidence to carry the question to the jury of whether the deceased intended not to accept the policy and whether his delay was for the purpose of postponing payment. In this connection we note the contention that the evidence of what the deceased said to members of his family and to the clerk at the postoffice in respect to the policy, during the period of delay, was incompetent. We think his state of mind in respect to the matter, as characterized by the circumstances referred to, was very material and that such circumstances were competent evidence as matter of *res gestæ*.

It is further contended that the policy did not become operative because the premium was not paid and the assured

did not become obligated to pay it. That payment of the premium was not necessarily a condition of the policy becoming operative, we have seen. If it was sent to the assured, trusting him to pay after receipt thereof, and he did not repudiate his offer to take it, as the jury found, then, of course, he became obligated to pay therefor. Treating the findings ·of the jury as verities, all elements of a complete contract existed and persisted to the end.

The policy contained a provision to the effect that, in case ·of default in payment of any premium on the policy, it would not be in force during the period of default so as to cover any loss sustained during such period. It is contended that such provision is fatal to the judgment, as the assured was in default when he was injured. Whether such provision included the first premium on such a policy is not clear. But let that be as it may, as the jury found credit was extended to the as-:sured, he was never in default.

We have now treated in general, or particular, all points raised by counsel for appellant which seem to merit it without ·discovering any reason for reversing the judgment. True, the conduct of the assured, in neglecting for a long time to ·take his policy from the office, was not very satisfactorily explained; but there was enough evidence on the subject to ·carry the question to the jury as to whether he intended to, or did, reject the policy. That respondent did not consider it rejected is quite strongly indicated by the fact that the agent acquiesced in its not being returned, did not cancel it, or notify the assured that it would not be treated as operative, and, with knowledge of the delay, requested assured to remit the premiums. That, in connection with all the other cir-·cumstances to which we have referred, is quite as indicative of a waiver of payment, continuing up to the time of the ac-·cident which resulted in the death of assured, as existed in *Washoe T. M. Co. v. Hibernia F. Ins. Co.* 66 N. Y. 613, re-·ferred to before in this opinion.

30 SUPREME COURT OF WISCONSIN. [Oct.

LeBeau v. Minneapolis, St. P. & S. S. M. R. Co. 164 Wis. 30.

The unpaid premium should have been credited on the policy indebtedness and judgment entered only for the remainder. That, doubtless, would have been done had the attention of the trial court been called to the matter. We have concluded that the application should be made now; but, under the circumstances, without effect as to costs. It will be a substantial correction of the judgment, and all that is due, considering the delay in raising the question, to allow the unpaid premium of $30 as a deduction from the judgment, not taking account of interest thereon from the date of the policy to the date of the judgment.

*By the Court.*—The judgment is modified by reducing it $30 as of the date it was rendered and affirmed, as so modified, full costs in this court to go to respondent.

ESCHWEILER, J., took no part.

A motion for a rehearing was denied, with $25 costs, on October 3, 1916.