HEIN, Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and others, Respondents.

*January 10—February 1, 1966.*

For the appellant there was a brief and oral argument by *Arthur DeBardeleben* of Park Falls.

For the respondent State Farm Mutual Automobile Insurance Company there was a brief and oral argument by *Donald G. Olson* of Phillips.

WILKIE, J.   Two issues are raised by this appeal:

First, did the trial court err in granting the insurer's motion for summary judgment?

Second, if not, did the trial court err in allowing the taxation of attorney's fees in favor of the insurer?

*Summary Judgment.*

State Farm is not entitled to summary judgment unless the facts presented conclusively show that the plaintiff's action has no merit and cannot be maintained as to it.[1] Summary judgment should not be granted where there are substantial issues of fact to be determined, when the evidence on a material issue is in conflict, or when there are permissible inferences from undisputed facts that would permit a different result.[2]

The first of three reasons appellant advances as to why the trial court erred in granting summary judgment dismissing State Farm is that, contrary to the trial court's finding, the evidence does not establish that Cegler had transferred title of the automobile to Coplen prior to the accident.

The moving papers and pleadings disclose the following evidentiary matters which, due to failure of appellant to file counteraffidavits, must be deemed uncontroverted.[3] On August 3, 1960, State Farm issued to Cegler a liability insurance policy covering a 1950 Chevrolet owned by him. The policy provided that "[n]o interest in this policy is assignable unless the company's consent is endorsed hereon." Cegler assigned the title of the vehicle to Coplen on November 8, 1961, and Coplen was driving the car November 22d when the collision causing injury to appellant occurred. On his application to the motor vehicle department for transfer of ownership, which was subscribed two months later, January 24, 1962, Coplen

---

[1] *Fjeseth v. New York Life Ins. Co.* (1961), 14 Wis. (2d) 230, 235, 111 N. W. (2d) 85; *Bryan v. Noble* (1958), 5 Wis. (2d) 48, 53, 92 N. W. (2d) 226.

[2] *Fjeseth v. New York Life Ins. Co.*, *supra*, footnote 1.

[3] *Bextel v. Franks* (1948), 252 Wis. 567, 32 N. W. (2d) 230.

represented that he had acquired the automobile on November 8, 1961, but that he had operated it on Wisconsin highways for the first time on January 24, 1962. Coplen filed an accident report with the motor vehicle department on April 9, 1962, and indicated on the SR–21 form that liability coverage was provided by State Farm. State Farm did not, within thirty days, deny that a policy was in effect, and later certified that the policy issued to Cegler was in force on November 22, 1961.

Appellant contends that these facts admit of conflicting inferences in two major respects. First, that since it can be reasonably inferred that Cegler supplied Coplen with the insurance coverage information inserted in the SR–21 portion of the accident report, their relationship must have been something other than seller and buyer. However, even assuming the Cegler did tell Coplen that the car was insured by State Farm, such a communication would hardly be determinative in proving any type of relationship between Cegler and Coplen.

Second, that respondent's failure to respond to the SR–21 form constitutes an admission of liability which in turn is tantamount to saying that no sale took place. But any action or inaction on the part of the alleged insurer can have no bearing whatsoever on the ownership question.

When selling a vehicle, the owner must insert the name of the purchaser on the certificate of title, endorse the certificate,[4] and deliver the certificate to the buyer.[5] After the vehicle is transferred to him, the new owner must apply for a new certificate of title by filling in the appropriate provisions of the old title certificate and sending it to the motor vehicle department.[6] Pointing out that the affidavits are silent as to (1) whether or not Cegler actually delivered the certificate of title and/or the vehicle to Coplen on November 8th, and (2) whether

[4] Sec. 342.18 (1) (a), Stats.
[5] Sec. 342.18 (1) (b), Stats.
[6] Sec. 342.19 (1), Stats.

Coplen operated the car with Cegler's plates or with none at all, appellant argues that an inference arises that the parties merely agreed to sell the car in the future. However, it should be noted that the fact that Coplen filled out the certificate on November 8th demonstrates that he did have at least temporary possession of it on that date. Furthermore, what appellant overlooks is that according to the governing statutes, the certificate of title could not have been completed by both the buyer and the seller until after the sale had been ultimately consummated. Thus, any side agreements as to license plates or when the car should physically change hands become immaterial to the question of when title was actually transferred. Cegler's affidavit that he transferred "title and ownership of the auto" to Coplen on November 8, 1961, and the declarations by Coplen and Cegler in the certificate that the sale was made on November 8th lead inescapably to the conclusion that that was the date of the transfer. Nor do any possible violations of the law on the part of Coplen (in (1) driving either with Cegler's registration plates or with none at all, (2) representing that the car was not driven on the highway until January 24, 1962, and (3) not immediately applying for a title) indicate otherwise. This is because *what* Coplen did after acquiring the automobile can have no bearing on *when* he actually bought it.

The second reason advanced by the appellant as to why the trial court erred in granting State Farm's motion for summary judgment is that, even if the automobile was sold on November 8, 1961, respondent is estopped from raising a defense of noncoverage by its failure to respond to the SR–21 form naming it as insurer. On this point the case, as the trial court ruled, is controlled by *Hain v. Biron.*[7] In *Hain* a liability policy which had been issued to one Biron expired on February 22, 1962, and was not renewed. Biron was involved in an accident on April 13,

---

[7] (1965), 26 Wis. (2d) 377, 132 N. W. (2d) 593.

1963, and took out a second policy, effective June 1, 1963. He filed an SR–21 with the motor vehicle department stating that his liability was covered by insurance. The SR–21 was sent to the insurance company which did not return it to the motor vehicle commissioner with a denial that a policy had been in effect on April 13th until after the thirty-day time limit had elapsed.[8] This court held that the failure to file did not amount to an admission of liability under sec. 344.15 (4), Stats.,[9] since this section only related to the ministerial function of the commissioner, and that the circumstances under which an insurance company is estopped from claiming no coverage are limited to those specifically mentioned in sec. 344.15 (5).[10]

Relying on *Schneck v. Mutual Service Casualty Ins. Co.*[11] and an article by Walter M. Bjork in the Wisconsin Bar Bulletin,[12] appellant urges that *Hain* be overruled; that, contrary to what was held in *Hain*, the failure to

---

[8] Sec. 344.15 (4), Stats.

[9] Which provides in part: "The commissioner shall assume that an automobile liability policy or bond as described in this section was in effect and applied to both the owner and operator with respect to the accident unless the insurance company or surety company notifies the commissioner otherwise within 30 days from the mailing to the company of that portion of the report pertaining to the automobile liability policy or bond."

[10] "(5) Nothing in this chapter shall be construed to impose any obligation not otherwise assumed by the insurance company or surety company in its automobile liability policy or bond except that if no correction is made in the report within 30 days after it is mailed to the insurance company or surety company, the company, except in case of fraud, whenever such fraud may occur, is estopped from using as a defense to its liability the insured's failure to give permission to the operator or a violation of the purposes of use specified in the automobile liability policy or bond or the use of the vehicle beyond agreed geographical limits."

[11] (1963), 18 Wis. (2d) 566, 119 N. W. (2d) 342.

[12] The New SR–21 Look in Wisconsin, 1958 Wisconsin Bar Bulletin (February), 12.

declare within thirty days that either the owner or operator of the vehicle, or both, was not covered by a policy operates, under sec. 344.15 (4), Stats., to estop the insurance company from later raising this defense. In *Schneck* this court said:

"The plaintiffs further contend because the estoppel created by sec. 344.15 (4), Stats., is one created as a matter of law and is a matter of evidence only, it differs from estoppel at common law or in equity and consequently the rules of pleading do not apply. We do not agree. The estoppel created by this section removed only the element of reliance from equitable estoppel and did not make it merely a matter of evidence." [13]

But in *Schneck* the problem was whether the driver of the car was operating it with the insured's permission, a defense specified in sub. (5). Sub. (4) also provided that when this particular defense was involved, an affidavit of the owner to this effect must accompany the corrected SR–21. Thus, any estoppel created under sub. (4) is concerned with permission, and *Schneck* is not authority for the proposition that an insurer is estopped from asserting that there was no policy in effect.

In a footnote to his article, Mr. Bjork says:

". . . attention is directed to Section 344.15 (4) . . . which provides that *the commissioner* shall assume that an automobile liability policy was in effect and applied to both the owner and operator with respect to the accident unless the company notifies the commissioner otherwise within the 30 day period. The statute refers to item 4 on the back of the SR–21 form and it would appear that unless the company corrects the form by checking item 4 it will also be estopped in this fourth respect." [14]

However, this language was only inserted as a query to the opinion that:

---

[13] *Schneck v. Mutual Service Casualty Ins. Co., supra,* footnote 11, at page 573.

[14] 1958 Wisconsin Bar Bulletin (February), at page 23.

"It is obvious from [sec. 344.15 (5), Stats.] . . . that the insurance company by its correction and filing of the SR–21 may be estopped from using as a defense either lack of permission, violation of use, or use beyond geographical limits. These appear to be the only defenses which an insurance company may lose under the new SR–21 law." [15]

This is precisely what was held in *Hain*. The Safety Responsibility Law is designed to protect third-party beneficiaries.[16] It may be true, as appellant argues, that the *Hain* interpretation of sec. 344.15 (4) and (5), Stats., will work a hardship in some cases in that an injured person can rely on the assumption of coverage to his detriment. Furthermore, as has been suggested,[17] there may be no good reason for not estopping insurers from raising defenses other than singled out in sec. 344.15 (5) when no timely correction has been offered. But the legislature has spoken. We observed in *Hain* that:

"In adopting the above-quoted provisions of sec. 344.15 (5) the legislature was obviously attempting to limit the circumstances under which an insurance company is estopped from claiming no coverage by reason of any failure on its part to timely notify the motor vehicle department of corrections in the report (the SR–21)." [18]

In light of the proviso in sec. 344.15 (5), Stats., that "[n]othing in this chapter shall be construed to impose any obligation not otherwise assumed by the insurance company" and the specific reference in that section to three situations where the insurer is estopped, sec. 344.15 (4) should not be interpreted to estop respondent from defending on the ground that no policy was in effect.

[15] 1958 Wisconsin Bar Bulletin (February), at page 21.

[16] *Mueller v. American Indemnity Co.* (1963), 19 Wis. (2d) 349, 120 N. W. (2d) 89.

[17] See Note Insurance—The New Safety Responsibility Law, 1959 Wisconsin Law Review, 552, 556.

[18] *Hain v. Biron, supra,* footnote 7, at page 380.

As a third and final reason for reversing the trial court, appellant argues that even if the *Hain* rule is not changed, it nonetheless should not be applied to the present facts because respondent conceded that the policy was in effect on November 22, 1961. But this admission was to the effect that the policy had not lapsed or been canceled and not that it covered Coplen at the time of the collision.

### Separate Judgment and Attorney's Fees.

Appellant contends that the trial court abused its discretion in dismissing the action as to respondent State Farm. More than one judgment can be entered in an action where the interests of justice will be promoted.[19] Since State Farm cannot be liable to appellant in this case, there appears to be no good reason why the suit cannot be dismissed as to it immediately.

Relying on *Rheingans v. Hepfler,*[20] appellant further maintains that it was error to allow State Farm to tax attorney's fees, under sec. 271.03, Stats., in the amount of $100 when the insurance company and Cegler were represented by the same counsel. Appellant fears another assessment of attorney's fees in the event Cegler is ultimately successful. However, *Rheingans* stands for the proposition that parties with identical interests but different attorneys cannot each tax attorney's fees.

Since Cegler may ultimately be found to be liable to appellant on an agency theory, denying costs to State Farm at this point gives rise to the possibility that no fees will be taxed whatsoever even though one defendant has prevailed. Consequently the proper time to raise the issue of double costs is at the conclusion of the lawsuit. In addition, although the issue of ownership is common

[19] *Home Savings Bank v. Bentley* (1958), 5 Wis. (2d) 19, 92 N. W. (2d) 377.
[20] (1943), 243 Wis. 126, 9 N. W. (2d) 585.

to both Cegler and State Farm, the question of agency is peculiar to Cegler alone. Thus, due to the lack of a completely identical interest, it would not be an abuse of discretion to award double fees.

*By the Court.*—Orders affirmed.