VIVIAN C. TIGHE, APPELLANT, v. SECURITY NATIONAL LIFE INSURANCE COMPANY, A CORPORATION, APPELLEE.

214 N. W. 2d 622

Filed February 7, 1974. No. 39121.

Leamer & Galvin, for appellant.

Deutsch & Hagen and Thomas O. Albers, for appellee.

Heard before Spencer, Smith, and Clinton, JJ., and Brodkey and Hastings, District Judges.

Brodkey, District Judge.

This is an action brought by Vivian C. Tighe, the divorced wife of Paul W. Tighe, deceased, and his beneficiary under a certain policy of insurance upon the life of said deceased. On March 8, 1965, Paul W. Tighe purchased a certain 10-year term convertible insurance policy in the face amount of $6,557 on his life from Bankers Trust Life Insurance Company. The appellee, Security National Life Insurance Company, subsequently assumed all liability under the aforesaid policy. The insured died on May 14, 1970, and notice of death was given to the appellee by the beneficiary. The insurance company thereafter refused to pay the amount of the policy to the appellant; and this action was then

commenced to recover the proceeds of said policy. Trial was held to the court, which held in favor of the appellee insurance company, and this appeal from that decision followed. We affirm.

The issue in this case is whether the policy was in force and effect on the date of decedent's death. The policy in question contains the following provision:

"PAYMENT OF PREMIUMS: This policy is based upon the payment of premiums annually in advance, but premiums may be paid in the manner, for the periods, and at the rates corresponding thereto as shown on the face of the policy. * * * Monthly premiums, where quoted on the face of the policy shall be due at * * * monthly intervals respectively reckoned from the date the first policy year begins. Upon written request to the Home Office a change from one such premium payment interval to another may be made effective on any premium due date with respect to premiums then and thereafter becoming due. All premiums are payable in advance at the Home Office of the Company * * *. If any premium * * * shall not be paid on or before its due date it is in default, and any liability of the Company under this policy shall thereupon cease and terminate except as otherwise provided.

"GRACE PERIOD: If any premium not be paid on or before its due date such premium is in default, but a grace period of thirty-one days will be allowed in the payment of all premiums after the first, during which period this policy will continue in force.

"REINSTATEMENT: Should this policy lapse it may be reinstated * * * upon evidence of insurability, including good health, being furnished satisfactory to and approved by the Company at its Home Office, and upon the payment of past due premiums with interest * * * ."

It appears from the record that during the first policy year from March 1965 to March 1966, the premium on

this policy was paid by a single annual premium of $56.75. Thereafter, commencing March 8, 1966, a special monthly payment of $4.90 was made through the medium of twelve post-dated checks, commonly referred to as the "Econo check method" whereby the insured furnished post-dated checks for twelve monthly premiums; and this method of paying premiums was thereafter followed. The last of the post-dated checks was dated February 8, 1970, and on that date was presented and paid, thereby paying up the policy until March 8, 1970. Prior to that time, however, to-wit, on January 2, 1970, a form letter was sent to the insured requesting that he send a new supply of twelve checks "so your premiums will be paid promptly when they are due" and informing him that the checks should commence with the month of March 1970. The post-dated checks were never sent to nor received by the insurance company, nor were any further premiums ever paid by or received from the insured. Subsequent to the death of the deceased, the beneficiary found among the papers and effects of the deceased the letter from the Security National Life Insurance Company requesting the new supply of post-dated checks and also three form premium notices for the months of March, April, and May 1970. An official of the insurance company testified that when a supply of post-dated checks is requested and not received, it is its practice to change the mode of paying premiums to regular monthly premiums, with premium notices sent through the mail to the last-known address of the insured. He also testified that when premium notices are thereafter mailed out, the amount of the premium is carried on the computer records of the company as an account receivable and that approximately 60 to 90 days after the policy is delinquent, it lapses the policy off its billing records on the computer so that no further premium notices go out to the insured. He further testified that because of the failure to receive premium pay-

ments from the insured, the policy lapsed after expiration of the grace period of 31 days after the policy due date of March 8th. We also point out that the policy in question, being a term policy, had no cash value or provisions for extended insurance.

The general rule is that a provision for forfeiture for nonpayment of premiums is self-executing, and that a notice of forfeiture on this ground, or other affirmative act on the part of the insurer, is necessary only if required by statute, by the terms of the contract, or by course of dealing. 45 C. J. S., Insurance, § 590 b, p. 388; 43 Am. Jur. 2d, Insurance, § 623, p. 632; Dressler v. Commonwealth Life Ins. Co., 105 Neb. 669, 181 N. W. 543 (1921); Novak v. LaFayette Life Ins. Co., 106 Neb. 417, 184 N. W. 64 (1921); Whitehorn v. Royal Arcanum, 131 Neb. 713, 269 N. W. 821 (1936). In the instant case, the policy of insurance involved was a life insurance policy, and there is no statute requiring the giving of notice of forfeiture; nor are there any provisions in the policy itself requiring that such notice of forfeiture be given. Moreover there is no evidence in the record of any course of dealing between the parties which would so require. The rule is that a forfeiture or lapse of a policy for nonpayment of a premium generally takes effect from the time the premium is due and unpaid. 45 C. J. S., Insurance, § 614 e, p. 453. It is the claim of the appellant, however, that by sending out premium notices to the insured and by treating the premiums due as accounts receivable the insurer waived its right to forfeit the policy for nonpayment of premium and is estopped to claim that the previous premiums are unpaid; and that the insurance contract, therefore, remained in force and effect. We do not agree with this contention. The rule is that some act or conduct amounting to a recognition of the continued validity of a policy as a binding obligation upon the insurer is necessary to constitute an effective waiver of policy provision for forfeiture for nonpayment of pre-

miums. John Hancock Mut. Life Ins. Co. v. Tuggle, 303 F. 2d 113 (10th Cir., 1962). As a general rule, a mere demand for overdue premiums by an insurer having knowledge of a cause for forfeiture does not amount to a waiver if the insured does not comply with the demand. Klanecky v. Woodmen of the World, 126 Neb. 809, 254 N. W. 577 (1934); Cady v. Travelers Ins. Co., 93 Neb. 634, 142 N. W. 107 (1913); John Hancock Mut. Life Ins. Co. v. Tuggle, 303 F. 2d 113 (10th Cir., 1962); Goldheim v. Connecticut Mut. Life Ins. Co., 172 F. Supp. 195 (U.S.D.C., D.C., 1959); Laustrup v. Bankers Life Co., 355 Mo. 304, 196 S. W. 2d 260 (1946); Ampy v. Metropolitan Cas. Ins. Co. of New York, 200 Va. 396, 105 S. E. 2d 839 (1958); 43 Am. Jur. 2d, Insurance, § 1123, p. 1044; Annotation, 85 A. L. R. 2d 1414; 6 Couch on Insurance 2d, § 32:302, p. 531, §32:304, p. 533.

With respect to the claim of estoppel made by appellant the required elements to establish such a claim in connection with insurance policies are set out in detail in Pester v. American Family Mut. Ins. Co., 186 Neb. 793, 186 N. W. 2d 711 (1971). Because of their length, we shall not repeat them in this opinion. However, among the requirements set out in the above case is that there must be a reliance, in good faith, upon the conduct or statements of the party to be estopped; and action or inaction based thereon of such a character to change the position or status of the party claiming the estoppel to his injury, detriment, or prejudice. In Goldheim v. Connecticut Mut. Life Ins. Co., *supra*, the court held that the insurer was not estopped from claiming that life policies had lapsed by taking a course of action which allegedly kept policies alive, when there was no showing that the insured changed position in reliance on any representation or course of action of the insurer; and that the act of the insurer which continued to send notices of premiums after default in payment of premiums by insured did not constitute a

waiver of such default. In the instant case there is no showing that the deceased knew the premiums for which he received premium notices were carried as an account receivable on the computer records of the company, and further there is nothing on the premium notices themselves to indicate that the policy was still in force and effect. This being so, we cannot conclude that an estoppel had been established in this case. See, also, Novak v. LaFayette Life Ins. Co., *supra;* Laustrup v. Bankers Life Co., *supra;* Exchange Trust Co. v. Capitol Life Ins. Co. of Colorado, 40 F. 2d 687, (U. S. D. C., N. D. Okla., 1930); Burns v. Prudential Ins. Co. of America, 162 Md. App. 228, 159 A. 606 (1932). While it is true that an extension of credit by the insurer to the insured for the payment of premiums may under certain circumstances constitute a waiver or estoppel, yet the question of whether credit was extended to the insured is a question of fact for the trier of facts. 6 Couch on Insurance 2d, § 32:286, p. 519, § 31:64, p. 72. The case of Martinez v. Great American Ins. Co. of New York, 286 F. Supp. 141 (U. S. D. C., W. D. Tex., 1968), is an exemple of a case where the court held there was a waiver of the right of the insurance company to terminate a policy, and an estoppel against the company to contend that the policy was not renewed, because of the fact that credit for the premium was carried on the books of the agency as an account receivable due to it from the insured. However, that case is readily distinguishable from the facts of the instant case, in that in the Martinez case the insurance company actually issued a renewal certificate to the insured, and also because of the fact that in that case a portion of the premium was paid in cash and the balance was carried as an account receivable. No such persuasive facts exist in this case. The rule is well-established that the insurer's recognition of the validity of a policy is a waiver of its forfeiture is not applied so as to waive a forfeiture

by virtue of the fact that insurer's records show that the policy is in force. 6 Couch on Insurance 2d, § 32:291, p. 523.

In Southie House v. Grand Lodge, Colored Knights of Pythias of Texas, 48 S. W. 2d 674 (Tex. Civ. App., 1932), the court stated as follows: "The appellee further contends that since the insurance company retained the name of the insured on its rolls, after the policy had lapsed, and forwarded to the secretary of the subordinate lodge blank receipts to be used in the event the insured paid the dues that were in arrears, this was a recognition on the part of the appellee that the insured was in good standing and his insurance in force and was a waiver of the right to declare a forfeiture. We cannot agree with this view. The insured remained a member of the lodge notwithstanding his insurance lapsed, and his name was properly retained on the roll of membership. He had the right to have his insurance reinstated if he paid his premiums at the termination of the quarter, and appellee's conduct, in preparing and forwarding blank receipts to the secretary of the local lodge to be used in the event the insured elected to reinstate his insurance as provided in the by-laws, was in no wise inconsistent with a forfeiture of the insurance. The insured having died during suspension, the beneficiary was not entitled to a recovery therein."

In Moss v. Aetna Life Ins. Co., 73 F. 2d 339 (6th Cir., 1934), the court held that the fact the insurer's records showed that life policies with double indemnity provision lapsed as of a date subsequent to insured's death and the expiration of the period of grace did not constitute a waiver of payment of premiums or abandonment of insured's rights clearly defined by the policy, the court stating: "One other contention must be noted. The company's records show that the policies lapsed as of August 26th. But these were routine clerical entries and a part of purely intra-company procedure.

They cannot be construed as a waiver of payment, or as between the company and the insured or his beneficiary an abandonment of rights clearly defined by the contract."

In the case of Laustrup v. Bankers Life Co., *supra,* the court held that in determining whether the life insurer had acted so as to lead insured to believe that terms of an extension agreement had been waived and that insurer treated a premium as having been paid by extending credit in lieu of cash payment, the fact that a policy card in the files of the insurer was marked "lapsed" was immaterial where there was no evidence that insured knew of the existence of the card, or even that the marking was placed thereon before the death of the insured, the court stating: "We place no importance on the fact that the policy card in defendant's files was marked 'lapsed March 1932.' This could not have induced insured to believe his policy was still in force. There was no evidence that insured knew of the existence of such a card or even that the marking was placed thereon before his death."

The foregoing authorities are very persuasive when considered in connection with the facts of the instant case. The fact that the insurance company carried on its computer records as an account receivable the amounts due for premiums under the premium notices for a period of 60 to 90 days would not necessarily indicate that the company intended to waive its right to a forfeiture of the policy for nonpayment of premiums, and would not estop the company from so claiming, particularly in the absence of any showing of any agreement or understanding between the company and the insured, or that the insured was in any way aware of the fact that the amount of the premiums due were carried as an account receivable on the records of the company. We believe the decision of the trial court in

this case was correct and we affirm that decision.

AFFIRMED.

SMITH, J., not participating.