PETERSON and wife, Appellants, v. TRUCK INSURANCE EXCHANGE and others, Respondents.

*No. 263. Submitted under sec. (Rule) 251.54 October 3, 1974.—*
*Decided November 26, 1974.*
(Also reported in 223 N. W. 2d 579.)

The cause was submitted for the appellants on the briefs of *Schloemer, Schlaefer & Alderson, S. C.,* attorneys, and *Marth & Marth* of counsel, all of West Bend, and for the respondent Truck Insurance Exchange on the brief of *Jenswold, Studt, Hanson, Clark & Kaufmann* of Madison.

DAY, J. This is an action for personal injury arising out of an automobile accident in which Glenn Peterson, Sr., and Luella Peterson, his wife, claim damages for personal injury as a result of the alleged negligence of the defendants-respondents John E. Gutweiler, Wayne Maubach and Madison Pallets, Inc. The complaint of the Petersons alleged that defendant-respondent Truck Insurance Exchange was the liability carrier for the Madison Pallets, Inc. The trial court, on the basis of the pleadings and affidavits submitted by the parties, granted a motion for summary judgment by the insurance carrier dismissing the action against the insurer. The court found that the policy in question was not in force at the time of the accident, due to prior lapse for nonpayment of premium. From this judgment, the Petersons appealed.

Four questions are raised on this appeal: (1) Does the record in this case conclusively show that the insurance carrier had not waived the lapse provision in a policy endorsement by extension of credit to the insured up to the time of the accident; (2) was the insurance carrier under sec. 631.36 (2), Stats.,[1] required to give a ten-day notice to the insured of cancellation of coverage for nonpayment of premium; (3) was the insurance carrier under its policy provision for cancellation of coverage for nonpayment of premium required to give a ten-day notice to the insured; and (4) was the insured a common carrier of property or a contract motor carrier, thus requiring the insurance carrier to give a notice at least ten days prior to the date of termination or cancellation of its policy to the division of motor vehicles under sec. 194.41 (3)?[2]

---

[1] "631.36 **Termination of insurance contracts.** . . .

"(2) MIDTERM CANCELLATION. (a) *Permissible grounds.* No insurance policy that has been in effect for at least 70 days or that has been renewed may be canceled by the insurer prior to the expiration of the agreed term or one year from the effective date of the policy or renewal, whichever is less, except on any one of the following grounds:

"1. Failure to pay a premium when due; and

"2. Such grounds as are specified in the policy. The commissioner shall not disapprove grounds for cancellation specified in the policy which are reasonably necessary to protect the insurer against material misrepresentations and against substantial changes in the risk it has assumed, except to the extent that it should reasonably foresee such changes.

"(b) *Notice.* No cancellation under par. (a) shall be effective until in the case of par. (a) 1 at least 10 days and in the case of par. (a) 2 at least 30 days after the first class mailing or delivery of a written notice to the policyholder. . . ."

[2] "194.41 **Undertaking for damage to person or property.** . . .

"(3) No undertaking filed under the provisions of this section shall be limited as to the total liability of the indemnitor thereunder, for any series of accidents, and no such undertaking shall be terminated at any time prior to its expiration under the terms thereof, nor canceled for any reason whatever, unless there shall have been filed with the department by the indemnitor a notice

A defendant is not entitled to summary judgment unless the facts presented conclusively show that the plaintiff's action has no merit and can not be maintained as to such defendant. *Hein v. State Farm Mut. Automobile Ins. Co.* (1966), 29 Wis. 2d 702, 706, 139 N. W. 2d 611. In that case, this court said: "Summary judgment should not be granted where there are substantial issues of fact to be determined, when the evidence on a material issue is in conflict, or when there are permissible inferences from undisputed facts that would permit a different result."

If the party opposing the motion for summary judgment submits facts sufficient to show there is a real controversy, summary judgment should not be granted. *Schuster v. Germantown Mut. Ins. Co.* (1968), 40 Wis. 2d 447, 162 N. W. 2d 129. This court must examine the evidence to determine if a question of fact exists or if there is a permissible inference from undisputed facts which would entitle the Petersons to a trial on the issue of coverage.

The Petersons alleged that on January 16, 1972, they were passengers in an automobile which was involved in a collision when the right-rear wheel of a truck of Madison Pallets, Inc., became disengaged from the truck and invaded the opposite lane of traffic and struck the automobile in which the Petersons were passengers, resulting in damages to them. They allege that the disengagement of the wheel was caused by the negligence of the defendants. Mr. Gutweiler was the driver of the truck. The truck had been leased by its owner Mr. Maubach to Madison Pallets, Inc.

The policy with Truck Insurance Exchange, covering the vehicle in question and other vehicles of Madison Pallets, Inc., became effective September 18, 1971. The face of the policy provides that it was effective from 4:30

thereof at least 10 days prior to the date of such termination or cancellation. . . ."

p.m. September 18, 1971, to September 18, 1972. It further provides: "The policy may be renewed for an additional term of 12 Calendar months each time the Company offers to renew by sending a bill for the required renewal premium, and the insured pays said premium in advance of the respective renewal date."

An endorsement attached to the policy, ET–222 (3d ed.), entitled "Monthly Payment Endorsement," provides that the policy period is amended to one calendar month. It provides for monthly payment of premium and further provides that the policy will lapse if the premium is not paid in advance each month.[3]

The record shows that a payment for one month was made during the month of September, 1971, but the record does not show any other payment by Madison Pallets, Inc., at any time thereafter. The answer of the insurance company alleged ". . . that on the 18th day of September, 1971, there was a policy in effect by this defendant, insuring the defendant Madison Pallets, Inc.; that on the 16th day of December, 1971, this policy was lapsed for reason of nonpayment of premiums to this defendant; . . ."

---

[3] "In consideration of the premium deposit, it is agreed that the policy period is amended to one calendar month commencing with the effective date shown in the Declarations. The policy shall continue in force for successive monthly periods, if the premium required for each month is paid on or before the expiration date of the then current monthly period.

"If the premium is not paid as specified above, the policy shall automatically become lapsed and void at 12:01 A. M. standard time on the expiration date of the monthly period for which the premium had last been paid.

"It is agreed that the monthly premium shall be subject to future adjustment, at the then current rates, on the semi-annual or annual anniversary of the policy, whichever is indicated in the Declarations as applicable.

"This endorsement becomes part of the policy to which it is attached and supersedes and controls anything in the policy contrary hereto but is otherwise subject to the Declarations, Insuring Agreements, Exclusions and Conditions thereof."

An affidavit, filed on behalf of the insurance company with its motion for summary judgment, by Robert W. Harley, manager of the insurance company's branch office at Milwaukee, states, ". . . that as appears by the records of that company, a policy of liability insurance was issued to Madison Pallets, Inc., insuring trucks owned by such Madison Pallets, Inc., such policy effective the 18th day of September, 1971; . . . That the premium due for the period of November 16th, 1971 to December 16th, 1971, was not paid and that accordingly, and in accordance with the provisions of the policy, the policy did lapse as of the 16th day of December, 1971. That there is still due and owing Truck Insurance Exchange, premium for the one month period, commencing November 16, 1971 to December 16th, 1971 which bill has been sent to Madison Pallets, Inc., and has never been paid. . . ."

An affidavit in opposition to the motion for summary judgment was made by one of the defendants, Wayne Maubach. He stated that he was an officer of Madison Pallets, Inc., and:

"That the policy between Truck Insurance Exchange and Madison Pallets, Inc. was financed through the Primatic Service Corporation, P. O. Box 54161, Los Angeles, California, said finance company being a subsidiary of Farmers Insurance Group; . . . That the only notice of cancellation the corporation received stated:

" 'If payment of the total due is not received by the due date shown, your insurance policy or policies will be cancelled or become lapsed and void in accordance with its or their terms;' . . . That the due date on said notice was February 28, 1972."

The record shows that the date of such notice was February 16, 1972, and that the amount claimed to be due was $1,560.39.

The trial court granted Truck Insurance Exchange's motion for summary judgment on the theory that the

policy in question had lapsed prior to the date of the accident, January 16, 1972. The court, in its decision, did not make a finding as to when the policy had lapsed. Judgment dismissing the complaint against Truck Insurance Exchange was entered March 12, 1973.

The first question on this appeal is, does the record in this case conclusively show that the insurance carrier had not waived the lapse provision in a policy endorsement by extension of credit to the insured up to the time of the accident?

In *Hartwig v. Aetna Life Ins. Co.* (1916), 164 Wis. 20, 158 N. W. 280, this court sustained a finding that credit had been extended to the insured and held therefore that a clause suspending coverage during default was inapplicable because default had never occurred. In *Fugina v. Northwestern National Life Ins. Co.* (1914), 155 Wis. 480, 483, 144 N. W. 989, this court upheld the trial court's finding that because of the course of dealing between the parties, "the provision as to lapse of the policy for nonpayment of premiums was waived and therefore there was no lapse or forfeiture." This court has stated that the doctrines of waiver and estoppel are applicable to forfeiture clauses. *Schuster vs. Germantown Mut. Ins. Co., supra; Ahnapee & W. R. Co. v. Challoner* (1967), 34 Wis. 2d 134, 148 N. W. 2d 646. The general rule is stated in 6 Couch, *Insurance,* 2d, p. 496, sec. 32.263:

"A provision for forfeiture, lapse or suspension for nonpayment of premiums, assessments, dues, or notes therefor when due, is for the benefit of the insurer, so that a waiver may be effected, or an estoppel created, and this may be manifested by conduct as well as by words. . . ."

The insurance company in this case could have waived the lapse provision or could be estopped from relying on the automatic lapse provision in its policy, depending on the facts. The facts in that respect in this record are

confusing. By the terms of the thirty-day clause, the policy should have lapsed on October 18, 1971, since the court found that there was only one monthly payment made. However, the affidavit of Mr. Harley for the insurance company states that the policy did not lapse until December 16, 1971. Mr. Harley's affidavit further states that Madison Pallets owes a premium for the period November 16, 1971, to December 16, 1971. If only one premium was paid for the period September 18th to October 18th, there would seem to be a permissible inference that credit had been extended at least to December 16, 1971. There is no explanation how the date changed from the 18th of the month to the 16th of the month. The brief of the insurance company states that the policy lapsed in November of 1971, and that a "normal" thirty-day grace period extended coverage until December, 1971. There is no explanation how a policy that supposedly lapsed the 18th of October was extended into November unless credit was given. The thirty-day grace period referred to in the insurance company's brief does not appear in the record. The endorsement says the policy "shall automatically become lapsed and void at 12:01 A. M. standard time on the expiration date of the monthly period for which the premium had last been paid."

In addition to the notice of February 16, 1972, which is shown in the record, the brief of the insurance company states that on February 28, 1972, a "final notice" was sent to Madison Pallets, Inc., and that on March 16, 1972, a "notice of lapse" was sent to Madison Pallets, Inc. These facts are not shown in the record. Whether or not the same facts, which apparently extended credit to December 16, 1971, also extended credit to February 28, 1972; and whether or not a waiver resulted can be determined only by a trial on those issues. The insurance company cites *Madgett v. Monroe County Mut. Tornado Ins. Co.* (1970), 46 Wis. 2d 708, 176 N. W. 2d 314, to the effect

that an insurance policy cannot be created by estoppel if an insurance policy does not exist; that is true. However, *Madgett* is distinguishable from the instant case because there no contract of insurance ever existed between the plaintiff and the insurance company. It is our opinion that only a hearing can determine conclusively whether or not the insurance company in this case waived its right to have the policy lapse for nonpayment of premiums. A similar case is the case of *Tighe v. Security National Life Ins. Co.* (1974), 191 Neb. 271, 214 N. W. 2d 622. This case involved a life insurance policy and the premiums were being paid on a monthly basis. The insured died on May 14, 1970, and the last premium payment was made for the period from February 8, 1970, to March 8, 1970. The policy provided that if any premium was not paid on or before its due date the liability of the company would cease and terminate. The policy also provided for a thirty-one-day grace period during which the policy would continue in force even though a premium had not been paid. The insurance company sent premium notices to the insured for the months of March, April and May, and carried on the computer records of the company an account receivable for these premiums. Nevertheless, the company claimed the policy lapsed at the end of the grace period, that is thirty-one days after March 8, 1970, before the death of the insured which occurred on May 14, 1971. The Nebraska Supreme Court agreed and upheld the judgment of the trial court. The Nebraska Supreme Court said:

"The rule is that some act or conduct amounting to a recognition of the continued validity of a policy as a binding obligation upon the insurer is necessary to constitute an effective waiver of a policy provision for forfeiture for nonpayment of premiums. . . . As a general rule, a mere demand for overdue premiums by an insurer having knowledge of a cause for forfeiture does not amount to a waiver if the insured does not comply with the demand." *Tighe* at 625.

The *Tighe* court did recognize, however, that:

"While it is true that an extension of credit by the insurer to the insured for the payment of premiums may under certain circumstances constitute a waiver or estoppel, yet the question of whether credit was extended to the insured is a question of fact for the trier of facts." *Tighe* at 626.

In the case of *Stueck v. Le Duc* (1973), 57 Wis. 2d 735, 205 N. W. 2d 139, cited by Truck Insurance Exchange in support of its position of automatic lapse, the insurance company there involved granted a time extension for payment of a renewal premium but set a specific date when the premium had to be paid in order to renew the policy with uninterrupted coverage. The policyholder did not tender payment until seven days after this date. This court held that the policy lapsed on the date set by the insurance company.

We conclude that the record in this case does not conclusively show that Truck Insurance Exchange had not waived the lapse provision in the policy endorsement by extension of credit to Madison Pallets, Inc., up to the time of the accident; therefore, the insurance carrier is not entitled to summary judgment.

The second question is, was the insurance carrier required to give a ten-day notice to the insured of cancellation of coverage for nonpayment of premium under sec. 631.36 (2), Stats.? [4]

The statute covers cancellation by the insurer "prior to the expiration of the agreed term." The effect of the statute on a policy provision providing for automatic lapse at the end of the month for which payment has been made, if premium for the next month has not been paid, has not been decided in Wisconsin.

"Cancellation" refers to termination of a policy prior to the end of the policy period, and "termination" refers

---

[4] *See* footnote 1.

to expiration of a policy by lapse of the policy period. *United States Fidelity & Guaranty Co. v. Security Fire & Indemnity Co.* (1966), 248 S. C. 307, 149 S. E. 2d 647; *Waynesville Security Bank v. Stuyvesant Ins. Co.* (Mo. App. 1973), 499 S. W. 2d 218. Other jurisdictions have held that suspension of coverage during a period of premium or assessment default was not a cancellation and was not covered by statutes requiring notice of cancellation for nonpayment of premium. *Eghotz v. Creech* (1962), 365 Mich. 527, 113 N. W. 2d 815; *Early v. Bremer County Farmers Mut. Fire Ins. Asso.* (1926), 201 Iowa 263, 207 N. W. 117.

The statute requires notice only in the case of "cancellation" and not in the case of "lapse." We hold there was no obligation under sec. 631.36 (2), Stats., to give a ten-day notice to the insured.

The third question is, was the insurance carrier required to give a ten-day notice to the insured under its policy for cancellation of coverage for nonpayment of premium?

The policy provided for notice to the insured upon cancellation for nonpayment of premium. The endorsement providing for automatic lapse on failure to pay premium requires no notice. The endorsement superseded the standard provisions in the policy requiring notice to the insured. *Inter-Insurance Exchange v. Westchester Fire Ins. Co.* (1964), 25 Wis. 2d 100, 130 N. W. 2d 185.

The fourth question is, was the insured a common carrier of property or contract motor carrier thus requiring the insurance carrier to give a notice of at least ten days prior to the date of termination or cancellation of its policy to the division of motor vehicles under sec. 194.41 (3), Stats.?

This provision in the statute raises a different question. Sec. 194.41 (1), Stats., provides in part:

"No common carrier of property, or contract motor carrier, shall operate any motor vehicle for which a

permit is required by this chapter unless it has on file with the division of motor vehicles and in effect a good and sufficient indemnity bond, policy of insurance or other contract in writing in such form and containing such terms and conditions as may be approved by the department issued by a surety, indemnity or insurance company or exchange lawfully qualified to transact such business in this state under which such indemnitor shall assume the liability prescribed by this section with respect to such motor vehicle."

Sec. 194.41 (3) provides no undertaking filed in accordance with this statute ". . . shall be terminated at any time prior to its expiration under the terms thereof, nor canceled for any reason whatever, unless there shall have been filed with the department by the indemnitor a notice thereof at least 10 days prior to the date of such termination or cancellation."

The question of whether or not Madison Pallets, Inc., is a common motor carrier or a contract motor carrier within the meaning of ch. 194, Stats., was not raised before the trial court. It is presented for the first time in the brief of counsel for the Petersons. The brief of the insurance carrier denies the allegation. The only thing in the record is an endorsement, ET 228, entitled "Amendatory Endorsement for Motor Carrier Transportation Policy," attached to the policy of insurance. Standing alone this does not establish that Madison Pallets, Inc., was in fact a common or contract motor carrier as those terms are defined by statute. Whether or not Madison Pallets, Inc., was such carrier, and if so, what was done with regard to the various mandatory sections of the statute by the insured and the insurer require factual determinations.

Counsel for Petersons raises two other issues, which in our opinion create neither a waiver nor estoppel against the carrier, nor do they establish that credit was extended to the insured. The first is the allegation that the in-

surance carrier investigated the accident, thus foreclosing a denial of coverage. The affidavit of counsel for the Petersons, made in opposition to the motion for summary judgment, merely alleges the insurance carrier investigated "all facts surrounding the accident at issue. . . ." There is nothing in the record to show the extent of the investigation by Truck Insurance Exchange. We conclude the insurance carrier did not waive its defense of coverage by investigating the accident. *Olson v. Sentry Ins. Co.* (1968), 38 Wis. 2d 175, 184, 156 N. W. 2d 429.

The second contention is that the insurance carrier is foreclosed from denying coverage because of its failure to deny coverage within thirty days after receiving the SR–21 form from the division of motor vehicles in accordance with sec. 344.15 (4), Stats.[5]

The rulings of this court on that issue are contrary to the Petersons' contention. *Hain v. Biron* (1965), 26 Wis. 2d 377, 132 N. W. 2d 593, and *Hein v. State Farm Mut. Automobile Ins. Co.* (1966), 29 Wis. 2d 702, 139 N. W. 2d 611. In discussing the *Hain* decision, this court said in *Hein* at 709:

[5] "344.15 **Requirements as to policy or bond.** . . .

"(4) After receipt of the report of an accident of the type specified in s. 344.12, the administrator shall forward to the insurance company or surety company named therein, that portion of the report which pertains to an automobile liability policy or bond. The administrator shall assume that an automobile liability policy or bond as described in this section was in effect and applied to both the owner and operator with respect to the accident unless the insurance company or surety company notifies the administrator otherwise within 30 days from the mailing to the company of that portion of the report pertaining to the automobile liability policy or bond. Upon receipt of notice from the company that an automobile liability policy or bond was in effect as to the owner only, the operator only or was not in effect as to either of them, the administrator shall within the remainder of the 90-day period specified in s. 344.13 (3) require the owner or operator or both, whichever is applicable, to deposit security pursuant to this chapter. . . ."

"This court held that the failure to file did not amount to an admission of liability under sec. 344.15 (4), Stats., since this section only related to the ministerial function of the commissioner, and that the circumstances under which an insurance company is estopped from claiming no coverage are limited to those specifically mentioned in sec. 344.15 (5)." [6]

We conclude the insurance carrier did not waive a coverage defense by not responding to the SR–21 notice.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings.

---

[6] "344.15 Requirements as to policy or bond. . . .

"(5) Nothing in this chapter shall be construed to impose any obligation not otherwise assumed by the insurance company or surety company in its automobile liability policy or bond except that if no correction is made in the report within 30 days after it is mailed to the insurance company or surety company, the company, except in case of fraud, whenever such fraud may occur, is estopped from using as a defense to its liability the insured's failure to give permission to the operator or a violation of the purposes of use specified in the automobile liability policy or bond or the use of the vehicle beyond agreed geographical limits."